**STATE of Louisiana**

v.

**Khoi Q. HOANG**

**NO. 2016–KA–0479**

Court of Appeal of Louisiana, Fourth Circuit.

**DECEMBER 21, 2016**

---

Leon A. Cannizzaro, Jr., DISTRICT ATTORNEY, ORLEANS PARISH, Kyle Daly, ASSISTANT DISTRICT ATTORNEY, ORLEANS PARISH, 619 South White Street, New Orleans, LA 70119, COUNSEL FOR APPELELEE/STATE OF LOUISIANA

Kevin V. Boshea, 2955 Ridgelake Drive, Suite 207, Metairie, LA 70002, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Joy Cossich Lobrano)

Judge Roland L. Belsome

Defendant, Khoi Hoang, appeals his conviction for obstruction of justice and the mandatory life sentence imposed on him as a multiple offender. For the reasons ·that follow, we reverse Defendant's conviction for obstruction of justice and vacate the sentence.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the night of April 23, 2013, the victim, Lien Nguyen, was shot multiple times and left on the side of the road in an isolated area off Old Gentilly Highway in New Orleans, Louisiana. He was still alive when he was found by James Mushatt. Mr. Mushatt called 911 and reported that the victim was bleeding from the mouth and neck and that his hands were tied behind his back. Mr. Mushatt also informed the 911 operator that he saw a silver Nissan Titan truck speeding away from the scene. During the 911 call Mr. Mushatt asked the victim who shot him, and the victim replied that it was his wife.[1] The victim died at the scene shortly thereafter.

After an investigation into the murder, police obtained arrest warrants for both Defendant and Ms. Nguyen on charges of conspiracy to commit second degree murder, solicitation to commit second degree murder, second degree murder, and obstruction of justice. When police went to execute the arrest warrants for Defendant and Ms. Nguyen, the two were found together at Ms. Nguyen's sister's home.

On September 26, 2013, the Grand Jury indicted Defendant, Khoi Hoang, with conspiracy to commit second degree murder, solicitation to commit second degree murder, second degree murder, and obstruction of justice stemming from the April 23, 2013 murder of Lien Nguyen.[2] The defendant pled not guilty on all charges at arraignment. Later, the court denied Defendant's motions to suppress evidence and witness statements.

---

1. Multiple witnesses refer to Lien Nguyen and Charity Nguyen as husband and wife, but it appears they were not legally married.

2. Charity Nguyen was also indicted on all counts except the solicitation charge. On October 20, 2015, the court severed the defendants.

Defendant proceeded to trial, and the jury found him guilty of the obstruction of justice charge but deadlocked on the other three counts. Subsequently, the court denied Defendant's motions for post-verdict judgment of acquittal and for a new trial. Defendant waived sentencing delays, and was sentenced to thirty-five years at hard labor. He filed a motion to reconsider the sentence, which was denied.

The State subsequently filed a Multiple Bill of Information, and a multiple offender hearing was held. Defendant was sentenced as a triple offender pursuant to La. R.S. 15:529.1 A(3)(b). The court denied Defendant's motion for downward departure and sentenced him to life imprisonment without the benefit of parole, probation, or suspension of sentence. This appeal followed.

On appeal, Defendant argues that there was insufficient evidence to support this conviction.

## ₃LAW AND DISCUSSION

The well settled standard of review for a sufficiency of the evidence claim is whether any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Williams*, 2011–0414, p. 15 (La.App. 4 Cir. 2/29/12), 85 So.3d 759, 769, *writ denied*, 2012–0708 (La. 9/21/12), 98 So.3d 326. On appeal, a reviewing court must consider the record as a whole as that is what a rational trier of fact would do. *State v. Santinac*, 1999–0782, p. 6 (La.App. 4 Cir. 6/14/00), 765 So.2d 1133, 1137.While rational decisions to convict must be upheld, irrational decisions to convict should be reversed. *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988). "If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution

standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally." *Id.* at 1311.

Where a conviction was based on circumstantial evidence, the evidence "must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This test is not separate from the *Jackson* standard; rather, it simply requires that "all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Ortiz*, 96–1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930. A reviewing court is not to determine whether a potential hypothesis suggested by the defendant could present an exculpatory explanation of the events. *State v. Davis*, 637 So.2d 1012, 1020 (La. 1994). Instead, the reviewing court determines whether the defendant's hypothesis is "sufficiently reasonable that a rational juror could not have found proof of guilt ₄beyond a reasonable doubt under *Jackson*." *Id.*; *State v. Calloway*, 2007–2306, p. 10 (La. 1/21/09), 1 So.3d 417, 422.

▄ The obstruction of justice charge against Defendant arose from the State's contentions that he removed the license plate from a black Nissan Titan truck allegedly used in the murder and that he removed a security system from the victim's home.

▄ To prove obstruction of justice, the State must show that a defendant altered, moved, or removed any object or substance "[a]t the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any [police] investigation." La. R.S. 14:130.1(A)(1). The State must also prove that he committed such acts with the "specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a crimi-

nal investigation or proceeding." *Id.* "A verdict of guilt is justified only when the record shows that at least some evidence was before the trier of fact for each essential element of the offense." *State v. Marcello*, 385 So.2d 244, 244 (La. 1980).

Defendant contends that the State failed to produce any direct evidence that he tampered with evidence related to the murder of Lien Nguyen. He further argues that any circumstantial evidence the State produced failed to exclude every reasonable hypothesis of Defendant's innocence. With regard to the license plate obstruction, Defendant argues that the State failed to establish that he removed the license plate from the black Nissan Titan truck belonging to Ms. Irene Booker. As to the security system obstruction, Defendant argues that the only evidence presented was the speculative testimony of Detective Hamilton. While the circumstantial evidence presented at trial established that these two events may have occurred, no reasonable juror could have determined that Defendant was the person responsible for either the removal of the license plate or the security system based on the scant circumstantial evidence presented by the State.

At trial, the State presented evidence that a dark grey Nissan Truck was likely used in the murder of the victim. Mr. Mushatt, the witness who found the victim, reported to the 911 operator that he saw a grey Nissan Titan occupied by three African American men speeding away from the scene. Detective Hamilton testified that video surveillance footage of the Nguyen residence from the night of the murder showed a dark-colored Nissan Titan truck pull into the Nguyens' driveway and shortly after drive off in the direction where the victim's body was found. The detective stated that he was unable to identify any of the individuals depicted in the video.

Detective Hamilton testified that during his investigation into the Nissan Titan, he learned that Ms. Irene Booker owned a similar truck that she loaned out to people in the neighborhood in exchange for narcotics. At trial, Ms. Booker testified that she loaned the truck to Defendant the afternoon of the murder, on April 23, 2013. She stated that he was supposed to return the truck to her by 5:30 that evening, but he did not. Ms. Booker was unable to recall exactly when the truck was returned, only that it was returned by someone other than Defendant well after midnight. Ms. Booker further testified that she did not know when the license plate went missing. She stated that she discovered the plate was gone at some point after Defendant allegedly borrowed the truck when she lent it to a friend, who informed her that the truck had no license plate on it. According to Ms. Booker, after she learned the plate was missing she asked around her apartment complex and learned that hers was not the only license plate to go missing about that same time.

The record indicates that the investigation into the missing license plate failed to turn up any direct evidence linking Defendant to the truck or the removal of its license plate. The record further demonstrates that circumstantial evidence connecting Defendant to the removal of the license plate was nonexistent. At best, the State proved that Defendant borrowed the Nissan Titan truck from Ms. Booker the afternoon of the murder. The State did not present any evidence tending to prove at what point in time the license plate was removed from the truck, or that Defendant removed the plate.

Regarding the missing surveillance system, the State failed to prove beyond a reasonable doubt that Defendant removed the Nguyen's system. The State relied

solely on the testimony of Detective Hamilton, who stated that based on the freshness of the dust pattern surrounding the missing system he believed it had been recently removed. While Ms. Nguyen did confirm that there had been a system in that location previously, she claimed that the system had been removed prior to the day the victim was murdered.

While the fact finder's credibility decisions should not generally be second guessed by a reviewing court, this standard only applies to rational credibility determinations based on actual evidence. See *Williams*, 85 So.3d at 770–71. In this case, the issue is not which witness the jury found more credible. The issue is that there was no evidentiary basis for the jury to conclude that Defendant tampered with a surveillance system in the victim's home. The State did not establish with |₇any degree of certainty when the system was removed from the Nguyen residence, much less that Defendant removed it at some time close to the murder in order to impede a police investigation. The State asserts that the circumstantial evidence was sufficient for a rational jury to find guilt beyond a reasonable doubt, but the moral certainty of guilt required for a conviction based on circumstantial evidence is not present here.

Defendant cites the case *State v. Mussall* in support of his argument that the jury acted irrationally in finding him guilty on the obstruction charge. *State v. Mussall*, 514 So.2d 505 (La.App. 4 Cir. 9/15/87), *writ granted*, 515 So.2d 1101 (La. 1987), *and aff'd*, 523 So.2d 1305 (La. 1988). While the facts in the *Mussall* case are distinguishable from those in this case, the commonality between the two cases is that the convictions in both relied solely on testimo-

ny that was unsupported by any physical evidence.[3]

The only evidence presented by the State was circumstantial and of a speculative nature. Unless that circumstantial evidence excluded every reasonable hypothesis of innocence, assuming every fact to be proved the evidence tended to prove, Defendant's conviction cannot stand. See *State v. Gould*, 395 So.2d 647, 656 (La. 1980). While the State was able to connect Defendant to Ms. Nguyen and the victim, the State failed to connect him to either of the alleged incidents. Due to the complete lack of evidence presented in support of the State's obstruction of justice charge against Defendant, a rational juror, viewing the evidence in the light most favorable to the prosecution, could only have speculated as to who removed the license plate from Ms. Booker's truck or the surveillance system from the |₈Nguyen residence. The evidence presented at trial failed to establish every element of the charged offense and cannot support Defendant's conviction for obstruction of justice.

## CONCLUSION

For the reasons stated above the defendant's conviction is reversed and the sentence as a multiple offender is vacated.

**CONVICTION AND SENTENCE VACATED**

LOVE, J., CONCURS AND ASSIGNS REASONS

LOBRANO, J., DISSENTS WITH REASONS

LOVE, J., CONCURS AND ASSIGNS REASONS

|₁I concur in the decision to reverse Defendant's conviction and vacate his sen-

---

**3.** In the *Mussall* case, there was doubt that a crime occurred. The victim was the only witness.

tence as a multiple offender. I agree that the State failed to establish sufficient evidence to support Defendant's conviction of obstruction of justice. I write separately to express my views of the evidence.

In the State's theory of the case, Ms. Nguyen became romantically involved with Defendant, and together, they conspired to have Lien Nguyen killed and to thwart the efforts of police in their investigation of his death. The State presented evidence that Defendant and Ms. Nguyen had an intimate relationship, which they tried to keep secret. The State also presented testimonial evidence that they approached Joseph Hoang, requesting that he kill Mr. Nguyen for them. The evidence showed Defendant borrowed Ms. Booker's truck the same day Mr. Nguyen was murdered and that a vehicle matching the truck's description was seen fleeing from the scene where Mr. Nguyen was found. Ms. Booker's truck was returned sometime after Mr. Nguyen was murdered. Further, the evidence showed that Ms. Nguyen gave numerous conflicting accounts of what happened to Mr. Nguyen. The State offered her most recent account of events as evidence of Defendant's guilt; at trial she denied conspiring to kill Mr. Nguyen but suggested that Defendant killed the victim over money.

$|_2$"A reviewing court affords great deference to a...jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Hopkins*, 39,730, p. 6 (La. App. 2 Cir. 8/17/05), 908 So.2d 1265, 1272 (quoting *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So.2d 508. Thus, we are precluded from assessing what weight to give the evidence. Moreover, where circumstantial evidence forms the basis of a conviction, the circumstances must be so unmistakably proven that they point not to the mere possibility of guilty,

but to the moral certainty of guilt. *State v. Shapiro*, 431 So.2d 372, 385 (La. 1982).

The State's theory of obstruction of justice rests largely on circumstantial evidence. The State alleges that the testimony of Ms. Booker and Detective Hamilton in conjunction with the evidence the State presented in support of the substantive charges is sufficient to support Defendant's obstruction of justice conviction. I agree with the majority that the evidence presented at trial was sufficient to demonstrate a connection between Defendant and Ms. Nguyen. In the same way, the evidence is sufficient to establish that the license plate and surveillance system may have been removed. However, in both instances, the timeframe within which they were removed was left open-ended as both witnesses could only speculate as to when they thought these incidents occurred. Without knowing when these items were removed, the State relied on speculation to carry its burden of proving that the surveillance camera was removed just before the victim's murder and that the license plate was removed before Ms. Booker's truck was returned to her by an unknown black male.

Relying on evidence to draw factual inferences, of which the jury could not agree, the dissent indicates that it would be an "extraordinary coincidence" for Defendant not to be connected to the tampering of evidence in this case. Even still, the evidence indicates another logical inference. Testimony shows that Ms. Booker loaned her truck to a number of people, that an eye witness saw three black$|_3$males fleeing from the scene in a truck similar to Ms. Booker's, and an unknown black male returned the truck to Ms. Booker. Likewise, the neighbor's video surveillance camera failed to show that Defendant was present when the truck arrived at the victim's house. Also, Ms. Booker testified that

when she realized the license plate was missing, she learned that several license plates belonging to others had gone missing.

Further, the State relied on Ms. Nguyen's testimony. However, there are a number of inconsistencies with her testimony. She first told police that she knew nothing about Mr. Nguyen's murder. She later claimed an unknown black male took the victim from their home. At trial, she recanted her previous accounts claiming Defendant was responsible for Mr. Nguyen's death. The State did not exclude the logical inference that someone other than Defendant may have removed the license plate and the surveillance camera. Thus, I find the evidence is not sufficient to connect Defendant to their removal without relying on speculative testimony and evidence that the jury deemed insufficient for support of requisite factual conclusions essential to its ability to reach a verdict (of any kind) relative to Defendant's guilt on the substantive charges. I find the jury's verdict was an apparent attempt to reach a compromise where it could not reach a verdict on the substantive charges and where the evidence which goes to the State's obstruction theory was scarce.

Therefore, I find this case rests on circumstantial evidence that is insufficient to convict Defendant of obstruction of justice. The State failed to present evidence sufficient to exclude every reasonable hypothesis of Defendant's innocence. Accordingly, I concur in the decision to reverse Defendant's conviction and vacate his sentence as a multiple offender.

## LOBRANO, J., DISSENTS WITH REASONS

I respectfully dissent from the majority's decision finding the State failed to establish every element of the charged offense of obstruction of justice under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), thus reversing defendant Khoi Hoang's ("Defendant") conviction and vacating his life sentence as a multiple offender. For the following reasons, I find the evidence offered by the State was sufficient to support Defendant's obstruction of justice conviction and I would therefore affirm the conviction and address Defendant's remaining claims regarding his multiple offender adjudication and sentencing.

Defendant was found guilty of La. R.S. 14:130.1, obstruction of justice, which provides, in pertinent part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or ....

Thus, "[n]othing beyond "movement" of the evidence is required by the statute if accompanied by the requisite intent and knowledge. *State v. Powell*, 2015–0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728 (citing *State v. Jones*, 2007–1052, p. 10 (La. 6/3/08), 983 So.2d 95, 101).

Knowledge is "an acquaintance with fact or truth ... or a "state of knowing or understanding." *Jones*, 2007–1052 at p. 9, 983 So.2d at 101.

Notably, although not addressed by the majority opinion, the trial court instructed the jury, consistent with La. R.S. 14:24, on the law of principals, as follows:[1]

Article 24 of the Revised Statutes defines principals as all persons concerned in the commission of a crime whether present or absent and whether they directly commit the act constituting this offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals.

The general rule of law as to principals is that what one does through another's agency is to be regarded as done by himself, and a person whose sole will procures the commission of a crime is a principal without regard to the physical agencies he employs and whether present or absent when the act was done.

All persons knowing the unlawful intent of a person committing a crime who are present, consenting thereto, and aiding or abetting either the furnishing the weapon for the attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety of concealment of the offender are principals and equal offenders and subject to the same punishment.

There are two sorts of principals: Those who are the actual perpetrators in the crime and those who are present or absent, assisting, abetting, counseling and instigating the commission of the offense.

Further, each person consenting to the commission of an offense by doing any one act which is an ingredient in the crime or immediately connected with or leading to its commission is a principal. Mere presence at the scene of a crime does not, however, make one a principal. Mere ⌊₃knowledge of a co-conspirator's intent is not sufficient to make one a principal. There must be proof that he actually committed the crime or that he had agreed to commit it or was present with a design to encourage, incite, or in some manner aid and abet or assist in its actual perpetration.

* * *

Thus, one who by any act tending to facilitate the execution of a crime acted with knowledge and intent to aid his accomplice in his unlawful design is also a principal in the eye of the law and is equally guilty with the actual perpetrator of the offense.

In other words, what one does through another's agency is to be regarded as done by himself. And one who procures the commission of a crime is a principal. To constitute a man as principal, he must actually assist, encourage, aid and abet his accomplice in the perpetration of the crime.

Defendant claims that the State's case against him was based on two theories: 1) that he removed the surveillance system at the victim's residence, and, 2) that he removed the license plate from Irene Booker's Nissan Titan truck. The State's argument that Defendant committed an obstruction of justice includes these two asserted theories but also has a broader reach: the mere movement of the Nissan Titan truck, allegedly used in the victim's abduction and murder or the movement/removal of the .38 caliber weapon from the crime scene would also constitute obstruction of justice if the requisite intent and knowledge mandated by La. R.S.

---

1.  No objection was lodged to the jury instruc-    tions on the law of principals.

14:130.1 can be shown. I find merit to the State's argument.

Addressing only the strongest arguments asserted by the State, *i.e.*, that the movement of the Nissan Titan truck from the crime scene as well as the removal of the license plate from that truck constitutes obstruction of justice, I find the evidence supports that Defendant committed, at the very least, one act which was an ingredient of the crime or which lead to its commission as a principal: he obtained the vehicle which was used in the abduction and the murder of the victim and subsequently returned or had it returned to its owner after the murder.[2]

Irene Booker ("Ms. Booker") testified that, on April 23, 2013, *the day of the murder*, Defendant showed up where she was staying with a friend and asked to borrow her truck for a couple of hours. Ms. Booker stated that she sometimes lent her truck, a 2009 Nissan Titan, dark gray in color (which she testified could look black), to others in exchange for drugs, an arrangement she also reported she made with Defendant for the use of her vehicle. Ms. Booker identified the Defendant as the man to whom she loaned her vehicle. She also identified the truck depicted in the surveillance video as belonging to her, the same surveillance video which established that a Nissan Titan truck was used to abduct and/or transport the victim away from his residence and in the direction of the crime scene where his body was later recovered. Ms. Booker reported that she loaned the truck to the Defendant at ap-

proximately 3:00 p.m. in the afternoon, and it was not returned until "after midnight."[3] She further testified that she called Defendant when the vehicle was not returned earlier and on time, and he told her that *"We'll* be there shortly." When the truck was subsequently returned, Ms. Booker did not know the person who returned the keys but reported that he had a hood on and was slim and tall. In addition to returning the keys to the truck, the person also left two hundred dollars in cash for Ms. Booker.[4]

The testimony of a single witness, if believed by the trier of fact, may be sufficient to support a conviction. *State v. Watkins*, 2013–1248, p. 14 (La. App. 4 Cir. 8/6/14), 146 So.3d 294, 303. In addition, a factfinder's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. *Id.*

Here, the jury apparently accepted Ms. Booker's testimony that the vehicle depicted in the surveillance video was the same truck she lent to Defendant. In crediting Ms. Booker's testimony that showed Defendant entered into and controlled the agreement to use the truck borrowed from Ms. Booker, it would be reasonable for a jury to also conclude that Defendant chose the way in which the truck was utilized while borrowed and that he controlled the time for its return to its owner. As a principal, it would be inconsequential whether Defendant was physically present in the truck at the victim's house during the abduction, in the truck as it left the

---

**2.** Although I concentrate on what I find are the State's strongest arguments regarding obstruction of justice, that focus does not negate the State's contention that the evidence was sufficient under *Jackson, supra,* to establish that Defendant, as a principal, was guilty of obstruction of justice based on removal of the surveillance system or the removal of the murder weapon from the crime scene.

**3.** The victim died of gunshot wounds at approximately 11:30 p.m. that evening.

**4.** Det. Hamilton, recalled by the defense, reported that Ms. Booker told him she was given $120 by Defendant.

crime scene where the victim was shot, present when the license plate was removed from the truck, or whether he instead procured the services of others to move the truck or remove the license plate, as "all persons concerned in the commission of a crime *whether present or absent* and *whether they directly commit the act constituting this offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime* are principals." La. R.S. 14:24 (emphasis added).

Additionally, the knowledge requirement to prove obstruction of justice pursuant to La. R.S. 14:130.1(A) is met if the perpetrator merely knows that an act "reasonably may" affect a "potential" or "future" criminal proceeding. *Powell*, 2015–0218 at p. 11, 179 So. 3d at 728 (citing *State v. Jones*, 2007–1052, p. 9 (La. 6/3/08), 983 So.2d 95, 101). A defendant must have tampered with evidence "with the specific intent of distorting the results" of a criminal investigation. *See* La. R.S. 14:130.1(A)(1). In this regard, the State offered a trove of evidence tending to show that Defendant had the specific intent to tamper with evidence (the truck and the license plate, in my example) in order to "distort the results" of a criminal investigation.

First, the jury heard substantial evidence which tended to establish that Defendant was engaged in a romantic relationship with the victim's wife, Charity Nguyen ("Ms. Nguyen"), providing a possible motive for the victim's murder and providing Defendant with an incentive to thwart any future criminal investigation. Ms. Nguyen herself admitted that she began having a sexual relationship with Defendant immediately after the victim was killed.[5] Additionally, the testimony of De-

tective Hamilton ("Det. Hamilton") established that, during his surveillance of Ms. Nguyen's business shortly after the murder, he observed an Asian male who was smoking a cigarette on the front porch of the business who "looked very comfortable." Det. Hamilton also noticed a white Lexus parked at the business. Det. Hamilton took a photograph of the individual. When he next asked Ms. Nguyen to identify the male in the photograph, she incorrectly identified him as her landlord's grandson although Det. Hamilton later learned that the man in the photograph was Defendant. Det. Hamilton's investigation also established that Defendant was in possession of Ms. Nguyen's white Lexus vehicle, having taken ownership of the Lexus prior to the murder.[6] Furthermore, when Det. Hamilton attempted to execute arrest warrants for Ms. Nguyen and Defendant, he found them both together at Ms. Nguyen's sister's home.

Additional circumstantial evidence of a romantic relationship between Defendant and Ms. Nguyen was provided by Rydell Stipe ("Mr. Stipe"), a witness for the State. Mr. Stipe testified that he lived across the street from the victim's store and knew the victim well, having performed work both at the store and the victim's house. Mr. Stipe reported that the day after he learned the victim was killed, he entered the store and saw Ms. Nguyen and Defendant in the store together. Ms. Nguyen, however, told Mr. Stipe that Defendant was her brother. He had never seen Defendant at the store before and thought the body language between Ms. Nguyen and Defendant "told on them." He asked Ms. Nguyen what happened to the victim and she responded that the victim

---

5. Ms. Nguyen claimed the relationship was coerced.

6. Defendant claimed that he did not know Ms. Nguyen although his brother did, when he was interviewed by Det. Hamilton.

had a heart attack. Later on that same day, Mr. Stipe went back to the store and saw Defendant and Ms. Nguyen kissing each other and smoking a cigarette. He subsequently informed Det. Hamilton of what he had witnessed and identified Defendant from a surveillance video. Based on the significant evidence presented by the State to demonstrate a romantic relationship between Defendant and Ms. Nguyen, a reasonable jury could have found that Defendant and Ms. Nguyen were working in concert and both were "concerned" in the victim's death because of their intimate relationship. Further, the jury could have believed that each one lied to protect the identity of the other and/or to preserve the secrecy of their intimate relationship because, as principals, they were both involved in the death of the victim. Moreover, the jury reasonably could have inferred that Defendant's procurement of the truck was done in furtherance of this objective.[7]

The State also was able to present evidence to the jury to show that the Defendant and Ms. Nguyen acted in concert when they approached Joseph Hoang, requesting that he kill the victim. When he angrily rebuffed them, both Defendant and Ms. Nguyen on separate occasions repeated the request that he kill the victim, with Defendant specifically offering Joseph Hoang cash and drugs in exchange as well as a .38 caliber gun to accomplish the deed. The victim was found murdered about three weeks after these meetings, shot twice with a .38 caliber handgun.

The jury also could have reasonably concluded that Defendant had the requisite intent to commit the crime of obstruction of justice because Defendant was implicated in the crime by Ms. Nguyen, his co-defendant. Although Ms. |₈Nguyen denied that she had conspired with Defendant to kill the victim, the State was able to show that she gave several conflicting accounts of what happened to her husband. First, Ms. Nguyen told the police she knew nothing about her husband's abduction; then she altered her story to say an unknown black male had taken the victim from their home. Eventually, as the trial date approached, she admitted that Defendant had killed the victim.[8] Ms. Nguyen also admitted that, on the day her husband was abducted, she met Defendant at his apartment, where he told her that he was going to "finish" the victim, a threat which she did not report to anyone. When Defendant came to her the next morning, reporting that he had, in fact, "finished" the victim,[9] she never called the police to report the victim's disappearance.[10]

In *State v. Mack*, the Louisiana Supreme Court reviewed a murder conviction based primarily on circumstantial evidence. *State v. Mack*, 2013–1311 (La. 5/7/14); 144 So.3d 983. The defendant in *Mack* was convicted as being a principal to murder based on the direct evidence of a

---

**7.** Although the jury hung on the substantive counts of conspiracy to commit second degree murder, solicitation to commit second-degree murder, and, second degree murder, the jury apparently found some of the testimony regarding Defendant and Ms. Nguyen concerning as the jury did not acquit on these charges.

**8.** Ms. Nguyen insinuated that Defendant killed the victim over money.

**9.** Ms. Nguyen claimed she thought Defendant meant he had beaten the victim.

**10.** The victim, in fact, was never identified until three days after he was murdered because no one had reported him missing. Also, despite Ms. Nguyen's claim that she had called the victim's phone several times after his disappearance, an investigation of her phone records showed she had never once called the victim after the day on which he was killed.

484

threat made to the victim twenty minutes before he was killed and the circumstantial evidence consisting of cell phone records that tied the defendant's cell phone number to that of the shooter and an unknown third party. The *Mack* Court found that jurors had an evidentiary basis for rejecting the defendant's hypothesis of innocence and had rationally refused to accept what would otherwise be an "extraordinary coincidence"—that the calls were not interrelated with the threat made so close in time to the murder of the victim. *Id.* at 11–12, 144 So.3d at 990. The Court noted:

To preserve the role of the fact finder, *i.e.*, to accord the deference demanded by *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)], this Court has further subscribed to the general principle in cases involving circumstantial evidence that when the fact finder at trial reasonably rejects the hypothesis of innocence advanced by the defendant, "that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984). A reasonable alternative hypothesis is not one "which could explain the events in an exculpatory fashion," but one that "is sufficiently reasonable that a rational juror could not 'have found proof of guilt beyond a reasonable doubt.'" *Id.* (quoting *Jackson*). *Thus, in all cases, the Jackson standard does not provide a reviewing court with a vehicle for substituting its appreciation of what the evidence has or has not proved for that of the fact finder. State v. Pigford*, 05–0477, p. 6 (La. 2/22/06), 922 So.2d 517, 521; *State v. Robertson*, 96–1048 (La. 10/4/96), 680 So.2d 1165, 1166. A reviewing court may impinge on the "fact finder's discretion … only to the extent necessary to guarantee the fundamental due process

of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988).

*Id.* at pp. 9–10, 144 So.3d at 989 (emphasis added). After giving deference to the trier of fact's resolution of conflicting inferences, the Louisiana Supreme Court held that the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant was a principal to the victim's murder. *Id.* at pp. 13–14, 144 So.3d at 991–92.

In the present case, the State relied on direct evidence that Defendant had borrowed a Nissan Titan truck from Ms. Booker, a truck which Ms. Booker identified as belonging to her after she viewed it on the surveillance video which captured the victim's abduction. The defense's hypothesis of innocence is that different witnesses gave variable descriptions of the Nissan Titan truck's color (dark gray, silver or black), thus a different truck must have been used for the crime than the one borrowed by Defendant. However, Ms. Booker testified that the color of the truck could vary depending on the lighting. The jury, having heard direct evidence that Ms. Booker had loaned her truck out to Defendant *on the same day as the murder* and that *it was returned shortly after the murder*, coupled with the direct evidence that a few scant weeks before the victim's murder, the Defendant and Ms. Nguyen had sought to hire someone to kill the victim, along with all of the direct and circumstantial evidence of a romantic relationship between Ms. Nguyen and Defendant, apparently rejected such an "extraordinary coincidence". Instead, the jury apparently accepted Ms. Booker's testimony about the color variations and rejected Defendant's hypothesis of innocence.

With regard to the removal of the license plate, the defense postures that there is no direct evidence that the removal was done by Defendant and, further-

more, that it may have been one of other license plates which went missing in Ms. Booker's neighborhood. First, under the law of principals, Defendant did not have to personally remove the license plate from the truck—whether present or absent and whether he directly committed the act constituting the offense, aided or abetted in its commission, or directly or indirectly counseled or procured another to commit the crime, he is guilty as a principal.[11] La. R.S. 14:24. Second, considering the direct evidence that Defendant was the one controlling the borrowing and the return of the truck to Ms. Booker on the day of the victim's murder, as well as all the other evidence including the attempt to hire someone to kill the victim by Defendant and Ms. Nguyen and the evidence of their relationship, the jury could rationally have rejected the idea that the license plate had "coincidentally" gone missing without any connection to the fact that it was loaned to Defendant.[12]

In sum, given the wealth of evidence presented to the jury which linked Defendant and Ms. Nguyen as principals with a common criminal motive, coupled with what would otherwise be an "extraordinary coincidence" in that Defendant borrowed the Nissan Titan truck from Ms. Booker on the very same afternoon as the victim's murder and returned the truck within hours of the killing of the victim, and that the license plate was missing after the truck was returned to its owner, viewing the evidence in the light most favorable to the prosecution, it is not unreasonable that the jury concluded Defendant was responsible for moving the truck in and out of the crime scene and/or removing the license plate from the truck, all in an attempt to obstruct justice. I would therefore deny Defendant's claim that the evidence was insufficient to support his conviction, affirm the conviction and address Defendant's remaining claims regarding his multiple offender adjudication and sentencing.[13]

---

11. Ms. Booker's testimony hinted that Defendant was working with others when she stated that he told her, *"We'll* be there shortly."

12. A jury could also have reasonably believed that the payment of additional cash to Ms. Booker upon return of the truck was compensation for the missing license plate.

13. To the extent that Defendant's assignments of error numbered two and three, *i.e.,* that the district court erred in denying his motion for new trial and in denying his motion for judgment notwithstanding the verdict, are also grounded on his claims of insufficient evidence, I would find that those claims have no merit. With regard to Defendant's fourth claim that the trial court erred in failing to declare a mistrial, I find no error in the district court's ruling that the admission of evidence of the drug exchange in return for use of the truck was admissible as *res gestae* evidence. Moreover, in light of the substantial evidence presented at trial, as discussed herein, any error in admitting this evidence would be harmless. However, since the majority opinion pretermitted Defendant's claims of a faulty multiple bill adjudication and an excessive sentence, I decline to address those claims.