# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of March, 2019**, are as follows:

**PER CURIAM**:

2017-K-0100    STATE OF LOUISIANA v. KHOI Q. HOANG (Parish of Orleans)

Here, from all of the evidence presented, a jury could reasonably infer (without speculating) that defendant removed the truck's license plate or directed someone else to do so because the truck was going to be used in a murder or had just been used in a murder. Thus, the majority of the panel of court below erred in finding that "circumstantial evidence connecting Defendant to the removal of the license plate was nonexistent." Accordingly, we reverse the court of appeal's decision and reinstate defendant's conviction and sentence for obstruction of justice. REVERSED.

JOHNSON, C.J., dissents and assigns reasons.

WEIMER, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2017-K-0100

## STATE OF LOUISIANA

## VERSUS

## KHOI Q. HOANG

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, PARISH OF ORLEANS

**PER CURIAM**

Lien Nguyen was abducted from his home during the night on April 23, 2013. His hands were bound behind and his back, he was shot twice, and he was left to die in an area off Old Gentilly Highway. He was still alive when he was found by James Mushatt, who called 911. Mr. Mushatt reported seeing a Nissan Titan truck speeding away and said the victim told him that his wife was responsible for the crime. The victim died at the scene shortly after.

Video surveillance captured a Nissan Titan truck as it pulled into the victim's driveway on the night of the murder and then drove off in the direction in which the victim was later found. During the investigation, a detective learned that Irene Booker owned a Nissan Titan truck, which she would loan out in exchange for narcotics. According to Ms. Booker, she loaned her truck to defendant on the afternoon of the murder. When defendant failed to return the truck to her at the time promised, she called him and he assured her, "We'll be there shortly." Someone other than defendant then returned the truck to her well after midnight and gave her $200. Ms. Booker later learned that her truck's license plate was

missing. She obtained a temporary license plate with an expiration date of June 24, 2013.[1]

Defendant was indicted with conspiracy to commit second degree murder, solicitation to commit second degree murder, second degree murder, and obstruction of justice. At trial, the State presented evidence that defendant and the victim's wife began an intimate relationship immediately after the murder. The State also presented evidence that the two had asked Joseph Hoang to kill the victim for them. The victim's wife denied conspiring to kill her husband but suggested defendant killed the victim over money owed for drugs. The victim's wife did not report his disappearance nor did she report it when defendant told her on the morning after the murder that he had "finished Lien . . . everything is done." Although a detective believed, based on the dust found around where the victim's missing security system had sat, that the security system was removed very recently, the victim's wife claimed the system had not functioned for some time and had been removed earlier.

The jury found defendant guilty as charged of obstruction but was unable to reach a verdict on the remaining charges. Defendant was sentenced to life imprisonment without parole eligibility as a third-felony habitual offender. The court of appeal reversed because it found the evidence insufficient to support the conviction. *State v. Hoang*, 16-0479 (La. App. 4 Cir. 2/21/16), 207 So.3d 473. The majority found the jury could only speculate from the State's circumstantial evidence that defendant removed the license plate from Ms. Booker's truck and

---

[1] R.S. 47:519(H) provides in pertinent part:

> Temporary registration plates or markers shall expire and become void upon the receipt of the annual registration plates or upon the expiration of sixty days from the date of issuance, depending on whichever event shall first occur.

removed the security system from the victim's home. *See Hoang*, 16-0479, pp. 4–5, 207 So.3d at 476 ("While the circumstantial evidence presented at trial established that these two events may have occurred, no reasonable juror could have determined that Defendant was the person responsible for either the removal of the license plate or the security system based on the scant circumstantial evidence presented by the State."). According to the majority, the State, at best, proved only that defendant borrowed the Nissan Titan truck from Ms. Booker the afternoon of the murder. *Hoang*, 16-0479, p. 6, 207 So.3d at 466. Thus, "[w]hile the State was able to connect Defendant and Ms. Nguyen to the victim, the State failed to connect him to either [the removal of the license plate or the removal of the surveillance system]." *Hoang*, 16-0479, p. 7, 207 So.3d at 477.

Judge Lobrano dissented because she found the evidence sufficient to prove defendant acted as a principal to the crime of obstruction. In addition to finding the State presented sufficient evidence that defendant was a principal to the removal of the license plate and the surveillance system, Judge Lobrano agreed with the State's contention that the jury could also have rationally concluded defendant was a principal to the disposal of the murder weapon and return of the truck after it was used to abduct and murder the victim, which acts also constitute obstruction. Thus, where the majority viewed the circumstantial evidence as only providing grist for the jury to speculate as to defendant's guilt, the dissent found it provided the jury a sufficient basis to reject the "extraordinary coincidence" of defendant's hypothesis of innocence. *See Hoang*, 16-0479, pp. 9–10, 207 So.3d at 484–485 (Lobrano, J., dissenting).

Jurors were instructed that they could find defendant guilty of obstruction if they found he engaged in two specific acts (emphasis added):

In order to convict the defendant of obstruction of justice, you must

find, first, that the defendant knew or had good reason to believe that his act may affect an actual, potential, present, past, future criminal proceeding, and two, that the *defendant tampered with evidence by disconnecting a video surveillance system and removing a license plate from a vehicle,* and three, that the defendant had a specific intent to distort the results of any actual, potential, present, past, future criminal proceeding or investigation, and four, that the evidence was reasonably likely to be relevant to an actual, potential, present, past, future criminal investigation or proceeding.

The State argued in this court, consistent with the views of the dissenting judge below, that the jury, after reading the jury charges as a whole, could have found defendant guilty based on his commission of other acts beside removing the license plate or surveillance system—such as by disposing of the murder weapon or by returning the truck after it was used to commit the crime. We need not reach that issue, however, because we find the evidence sufficient, under the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to prove defendant was a principal to the removal of the license plate, which was one of the means by which the jury was instructed defendant could commit obstruction.

First, however, we note that the jury was incorrectly instructed that they could find defendant guilty of obstruction if they found he disconnected the video surveillance system *and* removed the license plate (i.e. he committed two acts) when all the law requires is that he commit a single act. The State did not object to the use of the conjunction "and" in the jury charge. Regardless, the United States Supreme Court has held that "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." *Musacchio v. United States*, 577 U.S. —, —, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016). The jury in *Musacchio* was erroneously instructed using the conjunction "and" when

4

describing two ways in which the charged crime (a violation of 18 U.S.C. § 1030(a)(2)(C)) could be committed, similar to how the jury was instructed here, and the Government failed to object, as the State failed here. *See Musacchio*, 577 U.S. at —, 136 S.Ct. at 714 ("By using the conjunction 'and' when referring to both ways of violating § 1030(a)(2)(C), the instruction required the Government to prove an additional element. Yet the Government did not object to this error in the instructions."). Nonetheless, the United States Supreme Court found, for purposes of reviewing the sufficiency of the evidence, it did not matter that the prosecution acquiesced to incorrectly instructing the jury it must find an additional element that the prosecution had failed to prove:

> A reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed. When a jury finds guilt after being instructed on all elements of the charged crime plus one more element, the jury has made all the findings that due process requires. If a jury instruction requires the jury to find guilt on the elements of the charged crime, a defendant will have had a "meaningful opportunity to defend" against the charge. [*Jackson v. Virginia*], at 314, 99 S.Ct. 2781. And if the jury instruction requires the jury to find those elements "beyond a reasonable doubt," the defendant has been accorded the procedure that this Court has required to protect the presumption of innocence. *Id.*, at 314–315, 99 S.Ct. 2781. The Government's failure to introduce evidence of an additional element does not implicate the principles that sufficiency review protects. All that a defendant is entitled to on a sufficiency challenge is for the court to make a "legal" determination whether the evidence was strong enough to reach a jury at all. *Id.*, at 319, 99 S.Ct. 2781. The Government's failure to object to the heightened jury instruction thus does not affect the court's review for sufficiency of the evidence.

*Musacchio*, 577 U.S. at —, 136 S.Ct. at 715. Thus, under *Musacchio*, the district court's error here in using the conjunction "and" when instructing the jury of two ways in which the crime could be committed—i.e. by disconnecting the surveillance system and removing the license plate—does not alter this court's determination that the evidence is sufficient based solely on the State's proof of one of those two means—i.e. defendant's role as a principal in the removal of the

5

license plate.

The crime of obstruction of justice is defined in R.S. 14:130.1 in part as follows:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
>
> (b) At the location of storage, transfer, or place of review of any such evidence.

In addition, the law of principals provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

R.S. 14:24.

"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captv*ille, 448 So.2d 676, 678 (La. 1984). Where a conviction is based on circumstantial evidence, as is the case here, the evidence "must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.

In addition, the *Jackson* standard of review does not allow a jury to speculate on the probabilities of guilt where rational jurors would necessarily entertain a reasonable doubt. *State v. Mussall*, 522 So.2d 1305, 1311 (La. 1988) (citing 2 C. Wright, *Federal Practice & Procedure, Criminal 2d*, § 467). The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation. *See State v. Schwander*, 345 So.2d 1173, 1175 (La. 1978).

Here, from all of the evidence presented, a jury could reasonably infer (without speculating) that defendant removed the truck's license plate or directed someone else to do so because the truck was going to be used in a murder or had just been used in a murder. Thus, the majority of the panel of court below erred in finding that "circumstantial evidence connecting Defendant to the removal of the license plate was nonexistent." *Hoang*, 16-0479, p. 6, 207 So.3d at 476. Defendant argued one could not even conclude the truck he borrowed from Ms. Booker was the one used in the abduction and murder of the victim. However, despite discrepancies in whether the truck, viewed at night, was perceived as silver, grey, or dark grey, Ms. Booker reviewed the surveillance video and identified her truck, which was just that day borrowed by defendant, as the one shown in it being used to abduct the victim. While defendant argued that the person who returned the truck was not defendant, defendant assured Ms. Booker that "we" would return the truck, and indeed the truck was returned. While there was equivocal evidence as to when the temporary tag was issued—with Ms. Booker first testifying it was issued on April 24 but then stating it might have been issued in May—a rational juror could conclude, viewing the evidence in the light most favorable to the prosecution, that defendant either removed the license plate or directed the removal

7

of the license plate with the specific intent to distort any investigation into the abduction and murder of the victim. *See generally State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988) ("If *rational* triers of fact could disagree as to the interpretation of the evidence, the *rational* trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, *irrational* decisions to convict will be overturned, *rational* decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.") (emphasis in original). To accept defendant's hypothesis of innocence, that the license plate went coincidentally missing at some point after the murder, would indeed be to accept an "extraordinary coincidence" when viewed in the context of the entirety of the State's case, as noted by the dissent in the court below. *See Hoang*, 16-0479, p. 10–11, 207 So.3d at 484–485 (Lobrano, J., dissenting). Accordingly, we reverse the court of appeal's decision and reinstate defendant's conviction and sentence for obstruction of justice.

**REVERSED**

**SUPREME COURT OF LOUISIANA**

**No. 2017-K-0100**

**STATE OF LOUISIANA**

**VERSUS**

**KHOI Q. HOANG**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS**

**JOHNSON, Chief Justice, dissents and assigns reasons.**

In this case there is absolutely no rational interpretation of the circumstantial evidence by which a jury could convict this defendant of obstruction of justice. Thus, I find the appellate court correctly overturned defendant's conviction.

In reinstating the conviction, the majority of this court finds that, based on the evidence presented, "a jury could reasonably *infer* that defendant removed the truck's license plate or directed someone else to do so because the truck was going to be used in a murder or had just been used in a murder." (Emphasis added). My review of the record does not support this conclusion. The minimal evidence presented by the state proved, at best, that defendant borrowed the Nissan Titan truck from Ms. Booker the afternoon April 23, 2013, the vehicle was returned to Ms. Booker after midnight by a different unknown individual, and that at some point later in time, Ms. Booker realized the vehicle's license plate was missing. There is not a scintilla of evidence proving defendant removed the license plate or ordered it removed.

The state's evidence connecting defendant to the Nissan Titan truck consisted solely of the testimony of Ms. Irene Booker. Ms. Booker, an admitted cocaine addict,

1

testified that she routinely lent out the vehicle to people in the neighborhood in exchange for drugs. Interestingly, although Ms. Booker claimed to specifically remember that she lent defendant the vehicle on the afternoon of April 23, 2013, she could not specify any other particular dates she lent out the vehicle to anyone else in 2013. It is noteworthy that detectives talked to Ms. Booker months later, on August 7, 2013, and showed her surveillance video of the victim's home taken on April 23, 2013, after which she stated she lent defendant her vehicle on that date and identified the Titan truck in the video as her vehicle. It is obvious to me that Ms. Booker did not have an actual independent recollection of lending her vehicle to this defendant on that date. Additionally, Ms. Booker's testimony regarding the missing license plate was inconsistent and confusing.

Relative to defendant's connection to the vehicle and the missing license plate, Ms. Booker testified:

**State**: All right. Now, on the day of this incident, did you receive a phone call from Mr. Hoang, Khoi Hoang?

**Ms. Booker**: Well actually in person he asked me could he borrow my truck to go pick up dog kennels in LaPlace.

\*\*\*

**State**: Now, on the day that Mr. Hoang talked to you about this vehicle, did you have a license plate on that vehicle?

**Ms. Booker**: Yes, ma'am

\*\*\*

**State**: And, when Mr. Hoang asked you to borrow this vehicle, what did you do?

**Ms. Booker**: I allowed him to borrow it. I trusted that what he said he was going to do, he was going to do. He was going to pick up dog kennels in LaPlace.

\*\*\*

**State**: All right. Now, did you personally give your keys to Mr. Hoang?

2

**Ms. Booker**: Yes, I did.

**State**: And so can you explain to us how that happened?

**Ms. Booker**: He came in and he gave me the crack and I gave him the keys and he told me he would only be a couple of hours and then he left.

**State**: Did Mr. Hoang have anybody else with him at that time?

**Ms. Booker**: Not that I remember.

**State**: And so did you give him your vehicle on that day?

**Ms. Booker**: Yes, I did.

**State**: And did he - - did you tell him a time that you wanted your vehicle back?

**Ms. Booker**: Well, he told me he would be like two or three hours, so I was expecting him around five, five-thirty because I think it was like three o'clock in the afternoon that he came to get my keys.

**State**: Okay. And, to the best of your knowledge, you don't have any sort of independent knowledge about how this man died on - - in the 4200 block of McCoy Street, correct?

**Ms. Booker**: No. I didn't know nothing about it until Detective Hamilton hunted me down.

*** 

**State**: All right. Now, how can you be certain of the day that Mr. Hoang came to you and asked you for your vehicle?

**Ms. Booker**: How can I be certain?

**State**: Of the day?

**Ms. Booker**: There's really - - I can't be certain of date, but I'm certain of it because I know he's the one that I handed by keys to and then I found out later by Detective Hamilton - - and then later I found out what had happened, actually happened on that date.

***

3

| | |
|---|---|
| **State**: | Did you get your vehicle back within that two to three hour period that Mr. Hoang told you he would give it back to you? |
| **Ms. Booker**: | No, ma'am. |
| **State:** | When did you get your vehicle back? |
| **Ms. Booker**: | It was actually after midnight. |
| **State**: | And how do you know that it was after midnight? |
| **Ms. Booker**: | Because around eight o'clock I tried calling Khoi and I never got an answer, so I left - - I tried calling again and when he answered I said, "Look, I need my truck back. If you don't bring it back I'm going to call the police." So he was like, "All right, I'm" you know, "I'm going to bring it right back. We'll be there shortly." And I don't know who "we" were, but he said, "We'll be there shortly." So it still, I'm still getting high, of course, so the time after midnight comes, there was a knock at the door and I know it was after midnight because I was just getting ready to call again and I had picked up the phone. I didn't know exactly how long after midnight, but I know it was after midnight. And somebody knocked at the door and just handed the keys and two-hundred dollars to "Shorty", who answered the door. I don't even know who that person was. |

***

| | |
|---|---|
| **State**: | Okay. And so did you see the person who returned the vehicle? |
| **Ms. Booker**: | I didn't see them, but he had a hood on. They were tall. That's all I know. And it's dark there. There's no lights back there on the end of Dwyer, Michoud. |
| **State**: | When you got your vehicle back did you get your keys back? |
| **Ms. Booker**: | Yes, I did. |

***

| | |
|---|---|
| **State:** | Now, Ms. Booker, after this incident happened, this is the following day, correct, you have your vehicle back, correct? |
| **Ms. Booker**: | Uh-huh. |

4

**State**: Okay. At some point did you go outside to look at your vehicle?

**Ms. Booker**: It didn't dawn on me to like check it for anything because, like I said, I trusted that what he said he was going to do he went to do. And I didn't - - later on a friend of mine was driving it and they realized there was no license plate on the truck and they was like, "Why did you let me drive your truck without a license plate?" And I was like, "What you mean there's - - there's a license plate on my truck." He was like, "No, there is none." So - -

**State**: And, when you found out that your license plate had been missing, what did you do?

**Ms. Booker**: I was questioning anybody that had been around the apartment building, if they seen anything and some - - they said, "Oh, somebody else's license plate came up missing," so then we throwed it off as if somebody was running around stealing license plates.

**State**: Okay. Did you get a temporary tag?

**Ms. Booker**: Yes, we did.

**State**: And when did you do that?

**Ms. Booker**: Actually Bud did.

**State**: And who is Bud?

**Ms. Booker**: Another friend of mine that I was let driving my truck because he would like give me - - him and his old lady been giving me a place to stay, so I let him use my truck because his vehicle was down and, Bud, he got from a friend of his that was a dealership owner, he got a license, a temp tag from him.

\*\*\*

**State**: Alright. Now, this temporary tag that you obtained for your vehicle, if I were to show it to you, do you think you would be able to identify it?

**Ms. Booker**: Yes, Ma'am, I know it was issued on the 24th.

**State**: Alright. Do you know what month on the 24th, the month of the - - what day the 24th, what month?

**Ms. Booker**: 4/24/13.

5

| | |
|---|---|
| **State**: | Okay. Now, why are you back dating it for the temporary tag? |
| **Ms. Booker**: | Uh? |
| **State**: | You said 4/24 of 2013. What do you mean by that? |
| **Ms. Booker**: | April. |
| **State:** | Okay, you mean April 24 of 2013. What significance does that date mean? |
| **Ms. Booker**: | It might be May. |
| **State**: | Okay, If I - - |
| **Ms. Booker**: | I know the date, the day of it was the 24th because when my father-in-law and mother-in-law came to get the truck, I had told them that somebody stole it out of the parking lot at the motel and that I had just got a temp tag and it was like two weeks. Oh, he's like, "Why would they predate it? If you just got it yesterday why would they predate if for the 24th?" |

No evidence was presented at trial to demonstrate that the license plate was removed during the time defendant was in possession of the vehicle. Not only did Ms. Booker fail to provide the date she realized the license plate was missing, she did not suggest it was the next day or shortly after the vehicle was returned. She specifically denied checking or inspecting the vehicle when it was returned the next day. Moreover, Ms. Booker never suspected defendant removed the plate, instead believing it was one of several plates that were stolen in the neighborhood. Clearly, the timing of the issuance of the temporary plate is crucial in determining whether there was enough circumstantial evidence for a rational jury to find that Ms. Booker noticed her license plate missing the day after defendant borrowed her vehicle, thereby essentially eliminating the possibility that the license plate was removed or stolen by someone other than defendant. Yet, Ms. Booker's testimony falls far short of establishing a reliable time frame. The majority even concedes the evidence on

6

this issue is equivocal. Although Ms. Booker first testified the temporary tag was issued on April 24, 2013, she immediately backpedaled and stated "it could be May." Additionally, Ms. Booker's testimony suggests the tag was obtained by a friend, and may have been purposefully pre-dated or back-dated. Although the temporary tag was introduced into evidence, it does not include the date of issuance.[1]

In reversing the appellate court's decision, the majority simply notes in a conclusory manner that while there was equivocal evidence as to when the temporary tag was issued, a rational juror could conclude that defendant either removed the license plate or directed the removal of the license plate with the specific intent to distort any investigation into the abduction and murder of the victim. It is compelling that the majority does not point to a single piece of evidence to support its conclusory assertions. There is reason for that: no such evidence exists in the record. Not only is there a complete lack of evidence to support a finding that defendant removed the plate or directed removal of the plate, there is also a complete lack of evidence from which a jury could find defendant had the requisite specific intent. Considering Ms. Booker's testimony, and the lack of any other evidence, I find the record before us wholly inadequate to support defendant's conviction for obstruction of justice.

I agree with the court of appeal that "the only evidence presented by the State was circumstantial and of a speculative nature." *State v. Hoang*, 16-1479 (La. App. 4 Cir. 2/21/16), 207 So. 3d 473, 477. In considering a challenge to the sufficiency of the evidence, speculation and conjecture cannot take the place of reasonable inferences and evidence. *Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018).

---

[1] The tag provides an expiration date of 6/24/13. The state argues in this court that it is "common knowledge" that temporary tags expire after sixty days, citing La. R.S. 47:519(H). The majority apparently finds merit in this argument. However, I do not find this information to be "common knowledge" such that we can assume it was known to the jury. Additionally, this information was not provided to the jury, nor was the district court asked to take judicial notice of the statute.

"A conviction must be overturned if it is based on speculation alone because [a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Rojas Alvarez*, 451 F.3d 320, 333 (5th Cir. 2006) (quoting *United States v. Pettigrew*, 77 F.3d 1550, 1521 (5th Cir. 1996)). For these reasons, I find the court of appeal correctly reversed the conviction, and therefore I respectfully dissent.

# SUPREME COURT OF LOUISIANA

## NO. 2017-K-0100

## STATE OF LOUISIANA

## VERSUS

## KHOI Q. HOANG

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS*

**WEIMER, J.**, dissents and assigns reasons.

I agree with the dissenting opinion of the Chief Justice.

Additionally, I note that circumstantial evidence can be powerful evidence, if it essentially establishes an inescapable circle of guilt around a defendant's actions. The law requires that the pieces of evidence adduced by the state collectively form a complete circle, inasmuch as the circumstantial evidence "must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.

Here, continuing with that analogy, the state presented–at most–one curve that the state never built on to form a completed circle. The defendant was charged with second degree murder, solicitation to commit second degree murder, conspiracy to commit second degree murder, and obstruction of justice. At trial, the state's focus was on securing a guilty verdict on one of the charges directly tied to the murder; the state presented precious little evidence on the obstruction charge. The majority of this court tacitly concedes there was insufficient evidence to show any obstruction by removing a surveillance system, and instead finds sufficient evidence of obstruction by the defendant being responsible for removing the pickup truck's license plate around the time of the crime. However, the witness who loaned the defendant the

pickup truck used in the crimes was unable to establish when the license plate was removed; her testimony described two possible months. The witness also described that another license plate had been removed from a vehicle in her apartment buildings parking lot. There was simply nothing to show the critical facts of when, where, and by whom the license plate was removed.

In conclusion, the appellate court correctly determined the state failed to prove obstruction beyond a reasonable doubt. For the obstruction charge, I would hold that "the lack of sufficient evidence to sustain the conviction would entitle defendant to an acquittal under **Hudson v. Louisiana**, 450 U.S. 40, 44–45, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)." **State v. Crawford**, 2014-2153, p. 19 (La. 11/16/16), 218 So.3d 13, 25. However, because the jury was deadlocked on the murder charge and the related conspiracy and solicitation charges, it appears the defendant may be subject to being re-tried for those charges.

Thus, I respectfully dissent.