| STATE OF LOUISIANA | * | NO. 2024-KA-0722 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ALFRED C. SIMMONS | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 546-631, SECTION "SECTION L"
Judge Angel Harris
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Nakisha Ervin-Knott)

**LOBRANO, J., CONCURS IN THE RESULT**

Jason R. Williams
District Attorney
Brad Scott
Chief of Appeals
Thomas Frederick
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR STATE OF LOUISIANA/APPELLEE


Christopher A. Aberle
LOUISIANA APPELLATE PROJECT
P.O. Box 8583
Mandeville, LA 70470-8583

      COUNSEL FOR DEFENDANT/APPELLANT

                **AFFIRMED**

                **NOVEMBER 21, 2025**

*DLD*
*NEK*

In this criminal matter, the defendant, Alfred C. Simmons ("defendant"), appeals his convictions and sentences for second degree murder, stalking, possession of a firearm by a convicted felon, and obstruction of justice. For the reasons that follow, we affirm the defendant's convictions and sentences.

**STATEMENT OF CASE**

Shereen Smith was shot and killed around 8:30 p.m. on April 18, 2019 in New Orleans, Louisiana. On August 22, 2019, defendant was indicted by an Orleans Parish Grand Jury on the following charges: count one – stalking, in violation of La. R.S. 14:40.2(A); count two – second degree murder, in violation of La. R.S. 14:30.1; count three – possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1; and count four – obstruction of justice, in violation of La. R.S. 14:130.1. On September 12, 2019, defendant pled not guilty to the above charges.

The case proceeded to trial on March 25, 2024, and concluded on March 28, 2024. The jury found defendant guilty as charged on all counts. On April 29, 2024, the trial court denied defendant's motion for post-verdict judgment of

acquittal and motion for new trial.  On that same date, the court sentenced defendant to the following concurrently-running sentences:

> For the one count of stalking, I impose the following sentence, one year [at Orleans Parish Prison].  For the possession of a firearm by a previously convicted person, I impose[] the following sentence, 20 years in the Department of Corrections with hard labor.  For the obstruction of justice, I impose the following sentence, 40 years in the Department of Corrections with hard labor.  And for the second degree murder, I impose the mandatory sentence of life imprisonment in the Department of Corrections [without benefit of probation, parole or suspension of sentence].

On May 13, 2024, defendant filed a motion to reconsider his sentences and a motion for appeal.  On that same date, the trial court denied defendant's motion to reconsider his sentences and granted his motion for appeal.

### Errors Patent

Our review of the record reveals one error patent.  An error occurred when the trial court sentenced defendant on the same date, April 29, 2024, as the court denied defendant's motion for new trial and motion for post-verdict judgment of acquittal.

Louisiana Code of Criminal Procedure Article 873 provides, in pertinent part: "If a motion for new trial … is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.  If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately."  The Louisiana Supreme Court has found that a defendant's failure to waive the twenty-four-hour period is grounds to void the sentence if the defendant challenges the sentence.  *State v. Augustine,* 555 So.2d 1331, 1333-1334 (La. 1990).  However, where, as in this case, the defendant does not challenge his sentence on appeal or raise the failure to observe the twenty-four-hour delay as error, any error is harmless.  *State v Celestine,* 2000-2713, p. 5 (La.

2

App. 4 Cir. 2/13/02), 811 So.2d 44, 47.  As such, no corrective action will be taken.

**DISCUSSION**

On appeal, defendant raises the following assignments of error: (1) the evidence presented at trial was insufficient to support the convictions; (2) the district court erred in denying defendant's motion for a special jury instruction on the negative inference drawn from a missing witness and compounding the error by instructing the jury during deliberations to only consider the evidence presented; and (3) the defense rendered ineffective assistance of counsel.

**Assignment of Error No. 1**

The standard for review of a claim of insufficiency of the evidence was laid out by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979):

> …the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (Emphasis in original).

"Under the *Jackson* standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams*, 2011-0414, p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771. Further, "a factfinder's credibility determination is entitled to great weight and should not be disturbed unless it is contrary to the evidence." *Id*.  But where there is no direct evidence presented proving one or more of the elements of the offense, La. R.S.

3

15:438 governs circumstantial evidence and provides "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." "Stated differently, the reviewer as a matter of law, can affirm the conviction only if the reasonable hypothesis is the one favorable to the state and there is no extant reasonable hypothesis of innocence." *State v. Green*, 449 So.2d 141, 144 (La. App. 4 Cir. 1984) (citing *State v. Shapiro*, 431 So.2d 372 (La. 1983)). "This test is not separate from the *Jackson* standard; rather it simply requires that 'all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.'" *State v. Hoang*, 2016-0479, p. 3 (La. App. 4 Cir. 12/21/16), 207 So.3d 473, 475 (quoting *State v. Ortiz*, 96–1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930). If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. *State v. Captville,* 448 So.2d 676 (La. 1984).

"A reasonable alternative hypothesis is not one 'which could explain the events in an exculpatory fashion,' but one that 'is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt'" *State v. Mack*, 2013-1311, p. 9 (La. 5/7/14); 144 So. 3d 983, 989 (quoting *State v. Captville*, 448 So. 2d 676, 680 (La. 1984)). Therefore, "where the evidence is purely circumstantial, if it does not exclude every reasonable hypothesis of innocence, a rational juror cannot find defendant guilty beyond a reasonable doubt without violating constitutional due process safeguards." *State v. Monds*, 631 So. 2d 536, 539 (La. App. 4 Cir. 1994).

In *State v. Davis,* 637 So.2d 1012, 1020 (La. 5/23/94), the Louisiana Supreme Court explained:

In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently **reasonable** that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). La.R.S. 15:438; *State v. Captville,* 448 So.2d 676, 678 (La.1984); *State v. Rosiere,* 488 So.2d 965 (La.1986). [Emphasis original.]

### *Second degree murder*

With respect to his second degree murder conviction, defendant argues that the state "failed to prove beyond a reasonable doubt that [he] was the person who shot [the victim]."

Pursuant to the provisions of La. R.S. 14:30.1, to prove defendant guilty of second degree murder, the state was required to show that defendant killed the victim with the specific intent to kill or to inflict great bodily harm. Specific intent "exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). "Specific intent may be inferred from the circumstances and the defendant's actions." *State v. Everett,* 2011-0714, p. 14 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 619 (citations omitted).

In the case at hand, while defendant does not contest the fact that he was present when the victim was shot and killed, he contends that the circumstantial evidence submitted by the state failed to prove his identity as the shooter. As set forth above, in a circumstantial evidence case, a reviewing court, in evaluating the evidence in a light most favorable to the prosecution, is required to determine whether the possible alternative hypotheses presented by the defense were

"sufficiently **reasonable**" that a rational jury could not have found that defendant was the assailant. *Davis,* 637 So.2d at 1020 (emphasis original).

While the defense did not present any witnesses at trial who proposed an alternative hypothesis as to the identity of the shooter, such an alternative hypothesis was presented via the testimony of state witness, Anna Anderson ("Ms. Anderson"). Ms. Anderson testified that five days after the shooting defendant told her that the victim was the victim of a drive-by shooting. Defendant explained that he and the victim were talking at her doorway when a man named "Key," who followed him from Las Vegas, mistakenly shot and killed the victim (inferring that the shooter was aiming at him).

The above alternative hypothesis as to the identity of the shooter is not reasonable in that, while the surveillance video (state's exhibit 5) depicted a few vehicles passing on the street outside of the victim's home on the night of the shooting, none passed by during the victim's encounter with defendant, when, as the video reflected, the two were on the street engaged in a struggle; the victim walked away; defendant retrieved something from his vehicle and quickly followed the victim; and shortly thereafter, defendant fled the scene. Additionally, according to defendant's version of events, he and the victim were talking at her doorway when the drive-by shooter shot and killed her. However, three of the 911 callers told the dispatcher that the victim was not lying in her doorway, but rather, was lying in the street where the surveillance video reflected that defendant and the victim were struggling.

Additionally, the defense suggested that Paul Johnson ("Mr. Johnson"), a married man who was having an affair with the victim, may have been the shooter. Defendant claims that Mr. Johnson had a motive because he feared that defendant

6

may tell his wife about the affair and as such, while he was aiming to shoot and kill defendant, he accidently shot the victim. Once again, however, this alternative hypothesis is not reasonable. It is undisputed that the victim and Mr. Johnson were speaking to each other on the telephone shortly before the victim went outside to meet defendant. It is also undisputed that during her meeting with defendant, the victim was shot. It is unreasonable to believe that in that short interval of time, Mr. Johnson could have rushed to the victim's home and, aiming at defendant, accidently shot the victim.

The state proved, to the exclusion of any reasonable likelihood of misidentification, that defendant was the perpetrator with a substantial amount of circumstantial evidence supporting the jury's conclusion. First, the evidence showed that defendant was with the victim when she was shot and killed. Additionally, the surveillance video reflected that defendant and the victim were arguing. Michael Ruffin's testimony that he saw a man and a woman arguing supported what the video reflected. While the surveillance video did not capture the actual shooting, Michael Ruffin told the police that the man (defendant) arguing with the woman shot her. Specifically, while Mr. Ruffin did not see a gun in defendant's hand, he saw smoke and saw the victim fall to the ground. Shortly thereafter, Mr. Ruffin testified, and the surveillance video confirmed, that defendant quickly drove away.

More circumstantial evidence reflecting that defendant was the person who shot the victim were his Facebook messages reflecting his plan to kill her. In a March 25, 2019 Facebook post, defendant stated, "I'll go to jail for the rest of my life for killing that bitch [Shereen Smith] and feel good about it." In another post, dated March 23, 2019, defendant threatened that if he saw the victim around his

7

family, "I'm shooting her in the face…." Less than a month later, defendant carried out that threat.

In the instant matter, the evidence discussed above proved collateral facts and circumstances from which the existence of the primary fact, that defendant was the shooter, could be inferred according to reason and common experience. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the state proved defendant's identity as the killer. Defendant's claim that the state presented insufficient evidence to support his second degree murder conviction is without merit.

### *Felon in possession of a firearm*

> To convict a defendant of possession of a firearm by a convicted felon the State must prove beyond a reasonable doubt that the defendant: (1) possessed a firearm; (2) was previously convicted of an enumerated felony; (3) possessed the firearm within ten years of the previous conviction; and (4) had the general intent to commit the offense. La. R.S. 14:95.1; *State v. Fields*, 2012-0674, p. 6 (La. App. 4 Cir. 6/19/13), 120 So.3d 309, 315.

*State v. Jefferson,* 2023-0520, pp. 16-17 (La. App. 4 Cir. 2/8/24), 401 So.3d 1, 11*, writ denied*, 2024-00320 (La. 11/6/24), 395 So. 3d 874.

In the instant matter, defendant does not challenge the sufficiency of the evidence based on an alleged failure on the part of the state to satisfy above-enumerated factors (2) and (4). Instead, he challenges the sufficiency of the evidence reflecting that he possessed a firearm. Defendant asserts the evidence was insufficient because the "police never found [him] with a firearm" and Michael Ruffin never witnessed defendant with a gun in his hand.

In *State v. Jefferson,* 2023-0520, p. 16, 401 So.3d at 11, the defendant similarly argued that there was insufficient evidence to support his felon in possession of a firearm conviction because "the murder weapon was not found"

8

and there was "no evidence that he was seen with a firearm." However, in rejecting the defendant's argument, the Court reasoned:

> "Actual possession of the firearm is not necessary to prove the possession element of La. R.S. 14:95.1; constructive possession is sufficient." *State v. Fields*, 2012-0674, p. 6, 120 So.3d at 315. A person is in constructive possession of a firearm if it is subject to his dominion and control. *State v. Johnson*, 2003-1228, p. 5 (La. 4/14/04), 870 So.2d 995, 998. The facts of each case determine[] whether the proof is sufficient to establish possession. *State v. Harris,* 1994-0970, p. 4 (La. 12/8/94), 647 So.2d 337, 338-39. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. *Johnson*, 2003-1228, p. 5, 870 So.2d at 998. Well-settled jurisprudence requires that when circumstantial evidence forms the basis of a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372, 378 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This statutory test comports with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. *See State v. Rosiere*, 488 So.2d 965, 968 (La. 1986).
>
> …
>
> Defendant suggests that the underlying evidence surrounding his conviction on the felon in possession of a firearm charge was unreliable, and at best, circumstantial. However, when considering circumstantial evidence, the trier of fact has the authority to decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inference should be resolved, reconciled, or compromise; and the weight and effect to be given to each permissible inference. *State v. Spears,* 2005-0964, p. 3 (La. 4/4/06), 929 So.2d 1219, 1222 (citations omitted). In the instant case, the jury found that the only reasonable inference to be drawn from [the evidence presented] is that Defendant was logically in possession of a firearm…. Defendant presented no competing inference or objective countervailing evidence to contest the State's evidence.

*Jefferson*, 2023-0520, pp. 17-18, 401 So.3d 11-12.

In the case *sub judice*, it is undisputed that defendant was present when the victim was shot and killed. Further, it was captured on the surveillance video and

witnessed by Michael Ruffin that defendant and the victim argued and shortly thereafter, Mr. Ruffin saw smoke and saw a man (established to be defendant) quickly drive away. The surveillance video showed the victim, following the struggle/argument with defendant, walk away; defendant then retrieved something from his car; thereafter, defendant followed the victim and shortly thereafter, the victim's death was caused by gunfire. Based upon the above, the jury could reasonably infer that defendant, a convicted felon, was in possession of a firearm. Accordingly, the instant claim is without merit.

### *Obstruction of justice*

La. R.S. 14:130.1(A)(1)(a) and (b) pertinently define obstruction of justice as follows:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> > (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or U.S. law enforcement officers; or
> >
> > (b) At the location of storage, transfer, or place of review of any such evidence.

"Specific intent need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant." *State v. Harvey*, 2021-0730, p. 10 (La. App. 4 Cir. 5/25/22), 345 So.3d 1043, 1050, *writ denied,* 2022-00953 (La. 9/20/22), 346 So.3d 803.

10

In this case, defendant admitted to Anna Anderson that following the shooting, he threw his cell phone and "everything else in the river." While defendant, in his brief, focuses on his claim that there was insufficient evidence reflecting that he disposed of a firearm, disposal of a cell phone is sufficient to support an obstruction of justice conviction. *See State v. Duckett,* 2019-0319, p. 12 (La. App. 4 Cir. 12/18/19), 288 So.3d 167, 175 (evidence that the defendant disposed of a cell phone supported his conviction of obstruction of justice). Further, following the shooting, defendant "turned his phone off," thereby preventing police from ascertaining his whereabouts immediately after the shooting.

Accordingly, viewing the evidence in a light most favorable to the prosecution, a rational juror could have found defendant guilty of obstruction of justice based upon his admission to Ms. Anderson that he disposed of his cell phone by throwing it in the river and by deactivating his cell phone immediately following the murder; both actions taken to prevent police from connecting him to the murder. The instant claim is without merit.

***Stalking***

Under La. R.S. 14:40.2(A), stalking is defined as follows:

Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

11

Considerable evidence was provided reflecting defendant's uninvited presence not only at the victim's home, but also at her workplace. The victim's daughter testified that she had seen defendant sitting in his vehicle outside of the victim's home. Indeed, she testified that defendant was outside the victim's home on the night prior to the victim's murder. Specifically, she stated that defendant was sitting in his black BMW outside the victim's home when she and her mother (the victim) left the residence to listen to music and he was still there when they returned at 2:00 or 3:00 in the morning. Further, she testified that defendant repeatedly threatened her mother (as well as other family members) with anything that was necessary "to get to her [the victim]."

The victim's son who was living with her at the time of the murder, stated during his forensic interview (state's exhibit 6) that after his mother (the victim) ended her relationship with defendant, defendant continued to harass her; continually calling and sending her text messages. He stated that he could hear his mother "fussing on the phone" with defendant. Further, he stated that he had seen defendant sitting in his black BMW outside the home he shared with his mother, including on the night of the murder.

In addition to lying in wait outside her home, defendant also intruded into the victim's work life. Latera Beard, a co-worker, testified that approximately two days before the murder, she saw defendant walking behind the victim while the victim was walking to work. Ms. Beard testified that defendant "was always coming by the job" or going "around [the victim's] house."

Moreover, besides physically stalking the victim, defendant sent Facebook messages threatening to kill her. In one such message, defendant threatened to

shoot her in the face which was precisely what caused her death less than a month later.

While defendant does not refute the above-described evidence, he argues that the above actions on his part did not constitute stalking because the victim "did not consider his actions to amount to stalking"; "[s]he did not believe he was trying to cause her emotional distress."

An obvious problem with defendant's argument is that it is impossible to know what the victim felt about defendant's persistent calls, texts and threats, as well as his physical presence outside her home and office, because the victim is dead; she cannot offer testimony as to how she perceived his threatening conduct. While the victim made the fatal mistake of agreeing to meet defendant outside her home on the night she was murdered, that does not necessarily demonstrate she did not feel any trepidation. Indeed, the victim was aware of defendant's threats; she told her son that defendant had threatened to kill her and as a result, told him to make sure to keep the doors locked.

Contrary to defendant's assertion, a reasonable person would be alarmed and/or would suffer emotional distress as a result of his above-described actions. Accordingly, there was abundant evidence to support defendant's stalking conviction. The instant claim is without merit.

**Assignment of Error No. 2**

Defendant represents that the defense, on March 28, 2024, requested that the jury be provided the following special instruction:

> If a witness material to an issue in this case was peculiarly within the power of one party to produce, was not produced, and the witness's absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that their testimony would have been unfavorable to the party which failed to produce it.

Defendant claims that the trial court erred in denying the defense's request for the above special jury charge. Further, he claims that the court compounded the error when, in answering a question posed by the jury regarding why the state did not provide any evidence on the bullet that caused the death of the victim, the court instructed:

> So you all are only allowed to consider whatever evidence was put before you. If you'd like, we can give you an opportunity to review that evidence again, if you'd like to do so. But ... that's the only thing that you can consider, is what has already been put before you.

La. C.Cr.P. art. 841(A) provides that "[a]n irregularity cannot be availed of after verdict unless it was objected to at the time of occurrence." Article 841(A) further provides that it is sufficient, for purposes of preserving his objection, if the party "makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."

As the record reflects, and the state notes, all parties reviewed the jury instructions ahead of time, discussed the charges collaboratively, and agreed with respect to the instructions to be provided to the jury. No objections were lodged to the instructions. However, defense counsel requested the special jury charge and the trial court denied the request.

With respect to the jury's question about the absence of ballistics evidence and the trial court's response, the record reflects that defense counsel lodged no objection to the court's response, either before, when the court advised both defense counsel and the prosecution how it was going to respond to the jury's inquiry, or after the response was provided. There can be no presumption in this instance that defense counsel objected to the court's response to the jury's question.

14

**Assignment of Error No. 3**

Lastly, defendant argues that he received ineffective assistance of counsel due to counsel's failure to lodge the objections discussed above.

> In general, an ineffective assistance of counsel claim is properly raised in an application for post-conviction relief, in the district court, where a full evidentiary hearing on the matter may be conducted. *See State v. Brown,* 2016-0965, p. 17 (La. App. 4 Cir. 5/3/17), 219 So.3d 518, 531. Nonetheless, our Supreme Court has determined that if the record on appeal indicates there is evidence to decide the issue of ineffective assistance of counsel and the issue is raised on appeal by an assignment of error, the issue should be considered in the interest of judicial economy. *See State v. Seiss,* 428 So.2d 444, 449 (La. 1983). To support a claim for ineffective assistance of counsel, a defendant must meet the two-prong test set forth in *Strickland v. Washington*, which provides that a defendant must show (1) that counsel's representation was deficient and (2) the deficiency prejudiced the defendant. 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A defendant must "show that counsel made errors so serious that he was not operating as the type of counsel guaranteed by the Sixth Amendment to the United States Constitution." *State v. Boyd*, 2014-0408, p. 7 (La. App. 4 Cir. 7/25/18), 318 So.3d 397, 402 (citation omitted). It must also be proven that the counsel's error was so severe it deprived the defendant of a fair trial. *Id.* (citation omitted).

*State v. Horton,* 2024-0458 (La. App. 4 Cir. 7/24/25), --- So.3d ---, 2025 WL 2080548 at *8.

In this case, a review of the record reflects that defendant has failed to satisfy his burden of proof that counsel erred by failing to preserve this claim insofar as the alleged "special" jury charge he desired was essentially included in the charges provided to the jurors. First, the court generally charged, "You must determine whether or not a fact has been proven only by the evidence presented or from a lack of evidence." Later, the court instructed:

> If evidence material to an issue in this case was under the control of one party to produce [and] was not produced by that party and its absence has not been sufficiently - - sufficiently accounted for or explained, … you may, if you deem it appropriate, infer that the

15

evidence would have been unfavorable to the party which failed to produce it.

A comparison of the two charges reflects that the two are very similar; almost indistinct. Ergo, assuming that defendant's challenges to the lack of the requested special jury charge and the court's response to the jury's inquiry were not preserved as a substantive matter, he has failed to show any unprofessional error on the part of trial counsel or resulting prejudice. *Strickland v. Washington, supra*.

**CONCLUSION**

For the above and foregoing reasons, the defendant's convictions and sentences are affirmed.

**AFFIRMED**

16