449 So.2d 141 (1984)
STATE of Louisiana
v.
Thomas GREEN.
No. KA-0582.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1984.
*142 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-appellant Thomas Green.
Before REDMANN, C.J., and KLEES and BYRNES, JJ.
KLEES, Judge.
The defendant, Thomas Green, was charged with cruelty to a juvenile under LSA-R.S. 14:93, by a bill of information signed on September 11, 1981. On April 15 and 16, 1982, the defendant stood trial and was found guilty as charged by a jury of six. On September 3, 1983, he was sentenced to serve five years at hard labor, with credit for time served.
On June 30, 1981, at approximately 7:00 p.m., Patricia Bartley left her children in the care of defendant, Thomas Green, her live-in companion of approximately four months. When Bartley returned, at 10:00 p.m., the defendant met her one block away from the apartment and told her that he had made a mistake and had dropped a bucket of water on her two-year-old daughter, Lakisha's, feet. He told Bartley that they should take the child to a hospital.
The two took the child to New Orleans General Hospital where she was initially examined by Dr. Gerald Neri, an emergency physician. Dr. Neri testified that the child had second degree burns on both feet; the skin was blistered all the way around, up to the ankles. Dr. Eliza Sproles of the Child Protection Center, who examined Lakisha at Charity Hospital three days later, described the burn as a "stocking-type" burn. Both doctors agreed that it was unlikely that the child had either stepped in a pail of hot water, or that she *143 had been splashed by hot water when the pail was dropped. In the first instance, only one foot would have been burned because a child's instinctive response would be to withdraw the scalded member immediately. In the second instance, in a splash burn, the configuration of blisters would be uneven. Lakisha underwent skin grafts on both feet on July 14, 1981.
Patricia Bartley and her sister, Lynn, both testified that there was no running water in the apartment and that Patricia bathed all of the children by filling a tin bucket with water, boiling it on the stove, removing it to her bedroom, and then setting the children in the bucket when the water had cooled. Lynn Bartley testified that she visited with the children on the night in question after Patricia's departure. She stated that the children were asleep when she left the residence.
Several witnesses testified that both the defendant and Patricia Bartley had given conflicting accounts as to how the incident occurred. Patricia Bartley stated that the defendant first told her that he'd made a mistake and had dropped a bucket of water on the child's feet which splashed on her. She further testified that a week later, Green told her that the child had "messed on herself" and he had poured a pitcher of cold water in the bucket. When he placed Lakisha in the bucket he did not know why she was screaming. Bartley told a detective assigned to the case that she, herself, had made a mistake and had dropped a bucket and that the water in it had splashed on Lakisha. On the witness stand, she explained that she had lied to the detective because she did not want her welfare worker to find out that she had a man living with her. Dr. Neri testified that the man who accompanied Patricia Bartley to New Orleans General's emergency room told him that the child had stepped into a bucket of water. When Neri told the man that it would be unlikely that a child would step into a bucket of scalding water with both feet, the man said that the child's mother had spilled hot water and Lakisha had stepped into it. Bartley testified that the defendant told her that he had made a mistake and splashed water on the child's feet.
Patricia Bartley testified that it was possible that the child could have "messed" as she was not completely potty trained at the time in question. Patricia stated that the child had on white shorts when she left the residence that evening and had the same shorts on when she returned. The shorts were not soiled. However, Lynn Bartley testified that the child was wearing yellow shorts when she and Patricia left the residence at 7:00 that evening.
The state introduced several photographs of Lakisha as well as the nurse's discharge notes from Charity Hospital. No other evidence was introduced by the state nor did the defense offer any additional evidence in Thomas Green's behalf.
After deliberating for less than an hour, the jury returned with a verdict convicting the defendant of cruelty to a juvenile.
The record reveals no errors patent.

DEFENDANT'S ASSIGNMENT OF ERROR
For his sole specification of error, the defendant contends that the jury failed to exclude every reasonable hypothesis of innocence and, as such, the conviction should be reversed.
In direct evidence cases, the standard of review is found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as adopted by Louisiana in State v. Edwards, 400 So.2d 1370 (La. 1981). The reviewing court is called upon to take the evidence in the light most favorable to the state and determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt on every essential element of the offense. A stricter standard of review is applied in Louisiana when a case is comprised of circumstantial evidence. LSA-R.S. 15:438 establishes the rule of circumstantial evidence: "assuming every fact to be proved that the evidence tends to prove, in order to convince, it must exclude every *144 reasonable hypothesis of innocence." Stated differently, "The reviewer, as a matter of law, can affirm the conviction only if the reasonable hypothesis is the one favorable to the state and there is no extant reasonable hypothesis of innocence." State v. Shapiro, 431 So.2d 372 (La.1983).
The case at bar consists almost entirely of circumstantial evidence. Circumstantial evidence is defined as evidence consisting of "proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and experience." State v. Jackson, 419 So.2d 837, 839 (La.1982).
LSA-R.S. 14:93 defines cruelty to juveniles as "the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen, whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense."
Thus, it is necessary that the state prove the following facts, excluding every reasonable hypothesis of innocence:
1) That the defendant was over 17; and,
2) That the child was under 17; and,
3) That the child was caused unjustifiable pain or suffering; and,
4) That the defendant intentionally mistreated or neglected the victim; or
5) That the defendant was criminally negligent in his mistreatment or neglect of the child.
The record reveals that the defendant was twenty-three at the time of the offense and that the child was two. That the child was caused unjustifiable pain and suffering can be reasonably inferred by the severity of the burns and the fact that she was made to undergo reconstructive surgery on both feet. Thus we are confronted with the question of whether the state proved that the defendant intentionally mistreated or neglected the child, or was the defendant criminally negligent in his treatment or neglect of the child.
"The term `intentional' as used in the statute, refers to general criminal intent, `present whenever there is specific intent and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.'" State v. Sumler, 395 So.2d 766, 769 (La.1981) citing LSA-R.S. 14:10(2).
In the instant case, the only consistent evidence produced by the state was medical testimony that the circumferential burns sustained by Lakisha Bartley indicated that the child had been placed in scalding water.
Criminal negligence is defined as such "disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA-R.S. 14:12. See State v. Barr, 354 So.2d 1344 (La.1978).
In the instant case, both medical experts ruled out the possibility that the child either stepped into the pail with both feet or that she was splashed with scalding water. The state was understandably unable to produce evidence as to the actual temperature or amount of water or duration of immersion but the serious damage which resulted was obvious.
Counsel for the defendant argues that a reasonable hypothesis exists which would exonerate the defendant. He suggests that Thomas Green attempted to bathe the child as he had seen her mother bathe all the children; that he filled the bucket with water and heated it, called the child to be bathed, but failed to test the water.
Defense counsel directs the court's attention to State v. Savoy, 418 So.2d 547, 551 (La.1982), wherein the Supreme Court conceded that the defendant was a "consumate liar". The court nonetheless reversed, stating that "the total destruction of the defendant's credibility did not entail the creation of affirmating, substantive evidence *145 which weighs on the side of the state...". The defense argues that Thomas Green's conflicting accounts of the incident in question cannot be considered affirmative substantive proof which would support his conviction.
This argument was not accepted by the trier of fact. Our independent review of the record including a review of exhibits S-1 through S-5, which indicate the severity of the burns, the depth to which the burns extend demonstrates that a jury could have reasonably concluded, to the exclusion of every reasonable hypothesis of innocence that the defendant deliberately placed and held the child's feet in scalding water or was criminally negligent in preparing scalding water and thereafter placing the child into it without testing it.
Accordingly, for the reasons herein expressed, the conviction and sentence are hereby affirmed.
AFFIRMED.