STATE OF LOUISIANA      *      NO. 2025-KA-0133

VERSUS      *

     COURT OF APPEAL

KENTRELL HOWARD      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 552-518, SECTION "I"
Honorable Leon T. Roche,
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Paula A. Brown, Judge Dale N. Atkins)

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

     COUNSEL FOR DEFENDANT/APPELLANT

Jason R. Williams
DISTRICT ATTORNEY

Brad Scott
CHIEF OF APPEALS

Zachary M. Phillips
ASSISTANT DISTRICT ATTORNEY
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR PLAINTIFF/APPELLEE

**AFFIRMED IN PART;
REVERSED IN PART; REMANDED
JANUARY 8, 2026**

PAB
RLB
DNA

This criminal appeal arises from the conviction of Kentrell Howard ("Defendant") for second degree murder, obstruction of justice, and unauthorized use of a motor vehicle. Defendant contends that there is insufficient evidence to sustain his convictions of obstruction of justice and unauthorized use of a motor vehicle. Additionally, Defendant asserts that the sentences imposed for second degree murder, obstruction of justice and unauthorized use of a motor vehicle are constitutionally excessive. A review of the record reveals one error patent: the sentence imposed by the district court for the unauthorized use of a motor vehicle—five years imprisonment at hard labor—is above the statutory maximum allowed by La. R.S. 14:68.4.[1] Accordingly, for the reasons more fully outlined below, we affirm Defendant's conviction and sentence for second degree murder; we affirm Defendant's conviction for unauthorized use of a motor vehicle, but vacate the sentence and remand for resentencing in accordance with the law; and we reverse Defendant's conviction and sentence for obstruction of justice.

**FACTS AND PROCEDURAL HISTORY**

---

[1] Louisiana Revised Statutes 14:68.4 will be discussed more fully, *infra*.

1

In the early morning hours of May 8, 2021, Defendant and Markitha Sinegal ("Victim") were engaged in a heated argument at 7434 Read Boulevard, New Orleans, Louisiana (the "Howard residence"). Shortly afterwards, Victim was shot and succumbed to her injuries. Victim was staying at the Howard residence with Defendant—her boyfriend and father of their ten-month-old twins. At the time of the shooting, Defendant's infant children, mother Lara Lynn Howard ("Ms. Howard"), sister Kayla Howard ("Kayla") and Ms. Howard's male friend were also present in the home.

On August 26, 2021, an Orleans Parish Grand Jury returned an indictment, charging Defendant with: count one - second degree murder in violation of La. R.S. 14:30.1; count two - obstruction of justice in violation of La. R.S. 14:130.1; and count three - unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4. On September 28, 2021, Defendant pled not guilty to all charges. After Defendant was declared competent to stand trial twice, this matter came for a three-day jury trial on October 1, 2024.

Before witness testimony began, the parties stipulated to admitting numerous 911 call recordings, along with their corresponding incident reports, into evidence. The calls revealed a history of domestic violence incidents between Victim and Defendant. The State presented eleven witnesses. Defendant did not call any witnesses of his own. The 911 recordings and pertinent testimony elicited at trial are summarized below:

*911 Recordings*

- On July 9, 2020, while in Orleans Parish, Victim reported that Defendant engaged in a physical altercation with her while she was pregnant.

- On October 21, 2020, while in St. Tammany Parish, Victim reported that Defendant choked her, pointed his gun at her, slammed her against multiple

2

walls and threatened to kill her along with their infant children. Victim stated that the disturbance occurred at 110 Village Drive, Slidell, Louisiana.

- On October 29, 2020, while in Orleans Parish, Victim can be heard screaming "I'm tired of you hitting me", then proceeds to provide the address of the Howard residence, before the call ended. On the same day, Victim called 911 again and reported a fight with Defendant and asked the police to be dispatched to the Howard residence. Victim said that Defendant pointed a gun at her, strangled her and pushed her in the chest, which caused her to have trouble breathing. Victim reported that Defendant fled on foot with a gun, and Ms. Howard, Kayla and other parties were present during this altercation.

- On November 9, 2020, a female can be heard screaming in the background but the operator received no response before the call ended.

- On March 27, 2021, Victim reported that Defendant refused to release one of their children when she was leaving.

- On April 19, 2021, Victim reported that Defendant hid her car keys when she attempted to leave, pushed her and hit her with a walker in front of their children.

- On May 8, 2021, Ms. Howard reported that Victim had been shot. Ms. Howard said that Victim was not moving and she was "breathing funny." At the time of the call, Defendant can be heard in the background saying that he "made a mistake." The police arrived at the crime scene moments later.

The State began its case-in-chief by calling law enforcement officers who had investigated a prior domestic dispute between Victim and Defendant that occurred in Slidell, Louisiana.

*Deputy Brienne Castille*

On October 21, 2020, St. Tammany Parish Sheriff's Office ("STPSO") Deputy Brienne Castille ("Dep. Castille") was the responding officer that was dispatched to a disturbance at 110 Village Drive, Slidell, Louisiana. When she arrived, she met Victim, who was there at her mother's house with her two infant daughters. Dep. Castille testified that Victim had an injury to her lip that she said she sustained during a fight with Defendant. Victim told Dep. Castille that after she told Defendant that she no longer wanted to be in a relationship with him he

pushed her onto the bed and into multiple different walls. Victim said that Defendant was standing in the doorway with a black firearm pointed at her and told her he would harm her and their two infant daughters. The State introduced Dep. Castille's body camera footage, which was played for the jury. Dep. Castille said that Victim had provided Defendant's name but refused to identify him in a photo. The next day, Dep. Castille returned for a follow-up visit to Victim's mother's residence to obtain an identification, but no one answered the door. Without an identification by Victim and a full social security number, Dep. Castille was unable to issue a warrant.

*Detective Katie Ragan*

STPSO Detective Katie Ragan ("Det. Ragan") testified that in October 2020, she was assigned to the special victim's unit. Det. Ragan was tasked to do the follow-up for the domestic disturbance that occurred at Victim's mother's house in Slidell. Similar to Dep. Castille, Det. Ragan stated that an arrest of Defendant could not be made because there was an issue with verifying identification. Det. Ragan assembled a photo lineup and attempted to contact Victim numerous times without success. As a final attempt, Det. Ragan went to the residence and left her business card; she then sent a 10-day final notice, which informed Victim that her case would be closed if she did not respond timely.

*Sergeant Knyle Young*

On May 8, 2021—the date of the shooting—at approximately 5:00 a.m., New Orleans Police Department ("NOPD") Sergeant Knyle Young ("Sgt. Young") was dispatched to the Howard residence. As Sgt. Young exited his vehicle, he was met by Ms. Howard, who explained that someone had been shot inside the residence. Sgt. Young proceeded into the residence to locate the victim and found

4

Victim, lying unresponsive on the bedroom floor. After quickly assessing the scene, Sgt. Young concluded that Victim would not survive her injuries. The State introduced Sgt. Young's body camera footage and played it for the jury. The footage showed Victim lying motionless on the bedroom floor.

*Detective Christian Recile*

NOPD Detective Christian Recile ("Det. Recile") testified that he was the lead investigator for the homicide that occurred at the Howard residence on May 8, 2021. Once on the scene, he met Defendant's family, but Defendant was not present. Det. Recile testified that he identified Ms. Howard and Kayla as potential witnesses and relocated them to police headquarters where he conducted interviews. Based on the information Det. Recile gained from the interview, he was able to secure an arrest warrant for Defendant. Defendant, accompanied by his attorney, turned himself into the First District Police Station "about seven days after the shooting." Det. Recile affirmed that the first two priorities at the crime scene were to administer emergency medical care, and to interview the witnesses present. He observed bloody towels on the floor near Victim, and a swiss army knife and pepper spray in the closed position in the bedroom near a pile of clothing. Detective Recile explained that pepper spray in a closed position means that someone would have had to close it after use. He concluded that the blood on the towels was Victim's blood, because she was the only person who had been shot or injured. Det. Recile said that he did not submit the evidence for a DNA analysis because he thought it was unnecessary.

*Detective Lucrecia Gantner*

NOPD Detective Lucrecia Gantner ("Det. Gantner") testified that she, among other detectives, was notified just after 6:00 a.m. on May 8, 2021, of an

active homicide scene located at the Howard residence.  She was tasked with authoring a search warrant and working with the crime lab technician to document the evidence.  Det. Gantner described the layout of the crime scene and the evidence found in the bedroom where Victim had been shot.  She said that the swiss army knife, which was swabbed for future DNA analysis, and the pepper spray were both found near Victim's body.  Det. Gantner testified that she assumed the pepper spray belonged to Victim based on where it was found.  She said that she could not smell or feel any remnants of pepper spray and was unaware of how long its effects lasted.  Det. Gantner confirmed that the pepper spray was not swabbed on the scene.

*Deputy Kelsi Saltrelli*

STPSO Crime Lab Deputy Kelsi Saltrelli ("Dep. Saltrelli"), testified that on May 8, 2021, she was the crime scene technician for the NOPD when she responded to a call of a homicide shooting at the Howard residence.  Dep. Saltrelli said that she took photos of items that she collected from the crime scene.  She also took photos of Victim's injuries at University Medical Center.  The photos of Victim showed gunshot wounds to her arm and back.  The State introduced the items that Dep. Saltrelli collected at the crime scene, which included: a spent bullet casing; a pink pepper spray case; a swiss army knife; pepper spray; and two towels with blood.  The swiss army knife was in an open position and the pepper spray was in the safety position.  Dep. Saltrelli said that she submitted the knife for a fingerprint analysis, but a fingerprint analysis of the pepper spray was not requested by the detectives at the scene.

*Dr. Marianna Sandomirksy*

Dr. Marianna Sandomirsky ("Dr. Sandomirsky"), who performed Victim's autopsy, was accepted as an expert in forensic pathology at trial. Dr. Sandomirsky said that Victim suffered two gunshots, one being fatal. Dr. Sandomirsky classified the manner of death as a homicide.

*Kayla Howard*

Kayla testified that on May 8, 2021, she lived at the Howard residence. At the time of the shooting, she was sleeping and was awakened by the sound of a gunshot. She immediately ran to Defendant's room and grabbed her nieces. She then saw Defendant pacing backward and forward in the hallway, saying that he loved his kids and that he was sorry. Kayla testified that she did not see a gun, and she had heard only one gunshot. Kayla identified Defendant as the person she saw pacing the hallway the morning of the shooting.

*Ms. Howard*

Ms. Howard testified that the Howard residence is her house and that she was in the residence when the shooting occurred. She said the first time she woke up, Victim and Defendant were arguing. After entering Defendant's room, she saw Victim packing her bag. She encouraged Victim to go home and cool off, and she told Defendant to keep his hands to himself. Ms. Howard said that moments later, she heard Victim scream her name, and she heard a pop. She then entered the room and Victim was holding her back. Victim told Ms. Howard that Defendant shot her before falling over. Ms. Howard immediately called 911. The operator instructed her to grab clean towels and to hold them on Victim's wounds. Ms. Howard said that at that time Defendant was out of the room where the shooting occurred. Defendant was frantic and screaming. Ms. Howard testified that she did not see Defendant with a gun, and she did not know the current location of the gun

used in the shooting.  She identified Defendant in court as the person Victim said shot her.

Ms. Howard confirmed that Victim drove a vehicle to Ms. Howard's house the day before the shooting.  She further confirmed that the vehicle was not at the residence when the police arrived, and neither was Defendant.  Ms. Howard testified that only her infant grandchildren, Victim, Defendant and Kayla were at the residence at the time of the shooting.

*Ms. Rosatha Sinegal*

Ms. Rosatha Sinegal ("Ms. Sinegal"), Victim's mother, testified that she had recently bought a vehicle for Victim to use.  She made all of the car note payments on the vehicle and covered the insurance.  Ms. Sinegal testified that she only gave Victim permission to use the vehicle.  She did not give Defendant permission to use the vehicle.

At the conclusion of trial on October 3, 2024, but before the verdict was returned, the State added count four to the indictment, asserting that Defendant was subject to the sentencing enhancement set forth in La. C.Cr.P. art. 893.3(D).[2]  The jury found Defendant guilty as charged on all counts.  The district court sentenced Defendant as follows:

- Count one (second degree murder with a firearm) – life imprisonment to run concurrent with the sentences imposed in

---

[2] Louisiana Code of Criminal Procedure 893.3(D) provides:

> If the finder of fact finds beyond a reasonable doubt or a plea agreement is reached that includes a stipulation pursuant to Article 893.2(B) that a firearm was actually used or discharged by the defendant during the commission of the felony for which he was convicted, and thereby caused bodily injury, the court shall impose a term of imprisonment of not less than fifteen years nor more than the maximum term of imprisonment provided for the underlying offense; however, if the maximum sentence for the underlying felony is less than fifteen years, the court shall impose the maximum sentence.

connection with each count without benefit of probation, parole or suspension;

- Count two (obstruction of justice) – twenty years imprisonment at hard labor to run concurrent with the sentences imposed in connection with each count;

- Count three (unauthorized use of a motor vehicle) – five years imprisonment at hard labor to run concurrent with the sentences imposed in connection with each count; and

- Count four (firearm enhancement) – the district court did not impose a separate sentence, noting that the enhancement was moot in light of the life sentence imposed on Count one.

After sentencing, counsel for Defendant filed a motion to withdraw as counsel of record and the district court granted said motion. The district court appointed the Louisiana Appellate Project to represent Defendant on appeal. This timely appeal followed.

## ERRORS PATENT

An appellate court must review criminal appeal records for the existence of a patent error. *See* La. C.Cr.P. art. 920(2).[3] The record reveals one error patent: the sentence imposed on Defendant's conviction of unauthorized use of a motor vehicle is above the statutory maximum as outlined by law. Specifically, La. R.S. 14:68.4(B) provides: "[w]hoever commits the crime of unauthorized use of a motor vehicle shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than two years or both." Defendant has also raised this issue as an assigned error. As will be discussed later in this opinion, we affirm

---

[3] Louisiana Code of Criminal Procedure article 920 provides:

The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

the Defendant's conviction for unauthorized use of a motor vehicle. Accordingly, we vacate the sentence for unauthorized use of a motor vehicle and remand this matter to the district court for resentencing in accordance with law.

## DISCUSSION

In his appeal to this Court, Defendant assigns two errors for our review, which we summarize as follows: (1) the State failed to prove beyond a reasonable doubt that Defendant was guilty of obstruction of justice and unauthorized use of a motor vehicle; and (2) the district court erred in imposing constitutionally excessive sentences and a sentence that exceeds the statutory maximum. We will address each assignment of error in turn.

*Assignment of Error No. 1- Sufficiency of evidence*

"Appellate courts review the sufficiency of evidence used to support a conviction under the *Jackson* standard." *State v. Steele*, 24-0452, p. 16 (La. App. 4 Cir. 6/12/25), ___ So.3d ___, ___, 2025 WL 1661533 at *8 (quoting *State v. Riley*, 23-0040, p. 12 (La. App. 4 Cir. 8/31/23), 372 So.3d 77, 86). "Under *Jackson* 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* 24-0452 at pp. 16-17, 2025 WL 1661533, at *8 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). "The principal [criterion] of a Jackson . . . review is rationality." *Id.* 24-0452 at p. 17, 2025 WL 1661533, at *8 (quoting *State v. Dukes*, 19-0172, p. 7 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 752). "As such, 'irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.'"

10

*Id.* (quoting *State v. Alexis*, 14-0327, p. 6 (La. App. 4 Cir. 12/3/14), 157 So.3d 775, 778).

"[W]here there is no direct evidence presented proving one or more of the elements of the offense, La. R.S. 15:438 governs circumstantial evidence and provides 'assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.'" *Id.* 24-0452 at p. 17, 2025 WL 1661533, at *8 (quoting *State v. Mealancon*, 21-0119, pp. 6-7 (La. App. 4 Cir. 12/22/21), 334 So.3d 792, 797. "Stated differently, the reviewer as a matter of law, can affirm the conviction only if the reasonable hypothesis is the one favorable to the [S]tate and there is no extant reasonable hypothesis of innocence." *Id.* (quoting *State v. Green*, 449 So.2d 141, 144 (La. App. 4th Cir. 1984)). "This test is not separate from the *Jackson* standard; rather it simply requires that all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *Id.* 24-0452 at pp. 17-18, 2025 WL 1661533, at *8 (quoting *State v. Hoang*, 16-0479, p. 3 (La. App. 4 Cir. 12/21/16), 207 So.3d 473, 475).

"If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty." *Id.* 24-0452 at p. 18, 2025 WL 1661533, at *8. "Therefore, 'where the evidence is purely circumstantial, if it does not exclude every reasonable hypothesis of innocence, a rational juror cannot find defendant guilty beyond a reasonable doubt without violating constitutional due process safeguards.'" *Id.* (quoting *State v. Monds*, 91-0589 (La. App. 4 Cir. 2/10/94), 631 So.2d 536, 539). With these precepts in mind, we now turn to the merits of this case.

11

*Second degree murder*

Defendant did not appeal his conviction of second degree murder, but did raise the excessiveness of the sentence for this conviction as an assigned error.[4] Louisiana Revised Statutes 14:30.1(A)(1) defines second degree murder as "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." In his brief to this Court, Defendant concedes that "the circumstantial evidence as well as the statement of [Victim] to [Ms. Howard that Defendant shot her] arguably supports his conviction on the second degree murder charge." We agree and find that the evidence was sufficient to prove beyond a reasonable doubt that Defendant committed second degree murder.

*Obstruction of justice*

Louisiana Revised Statutes 14:130.1 provides, in pertinent part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding, civil immigration proceeding, or official act of an agent or employee of a governmental entity:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers . . . .

"[T]he knowledge requirement in La. R.S. 14:130.1(A) is met if the perpetrator merely knows that an act 'reasonably may' affect a 'potential' or 'future' criminal proceeding." *State v. Bowie*, 24-0700 (La. App. 4 Cir. 7/1/25),

_____

[4] Defendant's assignment of error regarding excessive sentences will be more fully discussed, *infra*.

___ So.3d ___, ___, 2025 WL 1806684, at *9 (quoting *State v. Powell*, 15-0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728). "The defendant must also have tampered with evidence 'with the specific intent of distorting the results' of a criminal investigation." *Id.* (quoting La. R.S. 14:130.1(A)(1)). "'Specific intent' is the state of mind that exists when circumstances indicate the offender actively desired prescribed criminal consequences to follow his act." *Id.* (quoting *State v. White*, 24-0385, p. 23 (La. App. 4 Cir. 5/14/25), ___ So.3d ___, ___, 2025 WL 1415587, at *12; *See also* La. R.S. 14:10(1)).

However, "[n]othing beyond 'movement' of the evidence is required by the statute if accompanied by the requisite intent and knowledge." *Id.*, 24-0700, 2025 WL 1806684, at *11. "Further, '[s]pecific intent [to commit obstruction of justice] need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant.'" *Id.*, 24-0700, 2025 WL 1806684, at *9 (quoting *State v. White*, 24-0385, p. 23 (La. App. 4 Cir. 5/14/25), ___ So.3d ___, ___, 2025 WL 1415587, at *12). To support a conviction of obstruction of justice the State must prove "more than the mere removal of evidence from a crime scene." *Id.* (quoting *White*, 24-0385, p. 23, ___ So.3d ___ at *12).

Defendant contends that the State presented only circumstantial evidence, which was insufficient to prove obstruction of justice. Defendant further contends that there was a reasonable hypothesis of innocence because another male was in the house at the time of the murder, and neither he, Ms. Howard nor Kayla were excluded as a person who may have found and removed the gun from the scene before the police arrived. Defendant cites *Scott* in support of his argument for the proposition that the mere removal of a gun from the crime scene without proof that the defendant's intent was to impede a criminal proceeding does not give rise to

13

the crime of obstruction of justice. *State v. Scott*, 23-0022, p. 15, (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 54.

In *Scott*, the defendant was charged and convicted of second degree murder, attempted second degree murder and obstruction of justice. The assault rifle used in the shooting was not recovered at the scene, and the State argued that the circumstantial evidence established that the defendant left with the rifle; thus, committing obstruction of justice. The State's case hinged on the theory that a rational juror would infer that since the video surveillance captured the defendant fleeing the scene and did not capture him leaving the assault rifle at the scene, the only reasonable inference was that the defendant took the assault rifle with him. On appeal, this Court affirmed the second degree and attempted second degree murder convictions, but reversed the conviction and sentence for obstruction of justice. This Court reasoned that "assuming the State established that Defendant fled the crime scene with his assault rifle, this evidence is not sufficient to prove beyond a reasonable doubt that he possessed the specific intent to distort the police investigation" *Scott*, 23-0022, p. 16, 372 So.3d at 55. Defendant maintains that, as in *Scott*, the State failed to prove beyond a reasonable doubt that he removed the gun from the crime scene and that he possessed specific intent to distort the police investigation.

The State, on the other hand, argues that the only reasonable inference is that Defendant took the gun with him as he fled the scene in Victim's vehicle with the intent to disrupt a criminal investigation and remove the weapon from the scene. The State contends that the instant case is not comparable to *Scott*; rather, it is more akin to this Court's recent decision in *State v. Alexander*, 23-0540 (La. App. 4 Cir. 4/23/24), 401 So.3d 105. In *Alexander*, the defendant—who was convicted

of second degree murder and obstruction of justice—deleted the record of a call to a taxi that transported him to the area where the murder occurred. This Court affirmed both convictions and held that unlike *Scott*, "the State presented additional evidence of obstruction" and "a rational juror could have concluded he was attempting to destroy evidence when he deleted the call." *Id.*, 23-0504, p. 17, 401 So.3d at pp. 115-116. The State argues that Defendant's escape in Victim's vehicle is equivalent to the deleting of the cell phone records in *Alexander*. We disagree.

We find the facts of this case more analogous to *Scott*. Here, while it is undisputed that Victim was shot with a gun, no witnesses saw Defendant with a gun, a gun was not recovered from Victim's vehicle and the gun has never been recovered. No other evidence, such as the bloody towels, the knife, pepper spray or any other items in the bedroom were tampered with. Defendant fled the scene before the police arrived. During the 911 call, Defendant could be heard in the background screaming that he made a mistake. Ms. Howard described him as frantic and screaming. Kayla testified that he was pacing back and forward, saying he was sorry. Defendant turned himself in to the police about seven days later. We find that Defendant's instinct to leave the crime scene, together with his state of mind at the time, do not rise to the level of specific intent required to support an obstruction of justice conviction. *See Bowie*, 24-0700, 2025 WL 1806684, at *11 (where this Court held that "taking the weapon and fleeing reflects an instinct for self-preservation, not interference."). This argument has merit.

*Unauthorized Use of a Motor Vehicle*

Defendant avers that the State failed to present evidence that proved beyond a reasonable doubt he was guilty of unauthorized use of a motor vehicle.

15

Specifically, Defendant argues that the State failed to prove that: (1) he intentionally used or took Victim's vehicle; (2) he did not have consent to use Victim's vehicle; and (3) the value of the vehicle, which is necessary for determining the classification of the offense and the sentencing range.

Louisiana Revised Statutes 14:68.4, which was in effect at the time of crime, provided:

> A. Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.
>
> B. Whoever commits the crime of unauthorized use of a motor vehicle shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than two years or both.

"The Louisiana Supreme Court has expressly construed unauthorized use of a movable as 'requiring a showing of *mens rea* or criminal intent . . . .'" *State in Interest of J.K.*, 22-0308, p. 13 (La. App. 4 Cir. 7/13/22), 344 So.3d 674, 684 (quoting *State ex rel. T.C.*, 09-1669, p. 4 (La. App. 4 Cir. 2/16/11), 60 So.3d 1260, 1262 (citations omitted)). Thus, "it is sufficient that the State prove a vehicle was knowingly used without the consent of the owner to establish the element of criminal intent." *Id.* at pp. 13-14, 344 So.3d at 684.

In the case *sub judice*, we conclude that the circumstantial evidence presented was sufficient to infer that Defendant intentionally took Victim's vehicle. The evidence revealed that on the day before the shooting, Victim's vehicle was at the Howard residence. After the shooting, the vehicle was no longer at her residence and neither was Defendant, but all other occupants of the house at the time of the shooting were still there. Additionally, Ms. Sinegal testified that she was the owner of the vehicle Victim drove, and she did not give Defendant

16

permission to use the vehicle. Ms. Sinegal further testified that she instructed Victim that Victim was the only person allowed to drive the vehicle. This testimony alone is sufficient to prove Defendant did not have consent to use Victim's vehicle. Finally, Defendant's contention that the State failed to prove the value of the vehicle as required by La. R.S. 14:68.4(C) is meritless. Louisiana Revised Statutes 14:68.4 was amended on July 22, 2022, by Acts 2022, No. 746, §1 (H. B. 627) to include section C., which provides that "[w]hen the misappropriation or taking amounts to less than a value of one thousand dollars, the offender shall be imprisoned for not more than six months, or fined not more than one thousand dollars, or both." Because that portion of the statute was not in effect on May 8, 2021—the date of the offense—it is inapplicable.

In evaluating the evidence in the light most favorable to the prosecution, this Court finds that a rational trier of fact could have reasonably found proof of guilt beyond a reasonable doubt that Defendant was guilty of an unauthorized use of a motor vehicle. This assignment of error is unpersuasive.

*Assignment of Error No.2- Constitutionally excessive sentences*

Defendant contends that his sentences for second degree murder, obstruction of justice and unauthorized use of a motor vehicle are constitutionally excessive. As previously discussed, the obstruction of justice conviction and sentence is reversed, and, as set forth in the error patent section, the sentence for unauthorized use of a motor vehicle sentence is vacated and remanded for resentencing. Thus, our constitutional excessiveness review will only address Defendant's sentence for second degree murder.

*Sentence for second degree murder*

17

Defendant argues that the imposition of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for his second degree murder conviction is excessive. Defendant further argues that this Court should give him the opportunity to prove that he is entitled to a downward departure of the sentence. Before addressing Defendant's claim on the merits, we must first determine whether he preserved his excessive sentence claim for review. The record reflects that Defendant did not object to the sentence of life imprisonment without benefits nor did he file a motion to reconsider his sentence.

Louisiana Code of Criminal Procedure art. 881.1(A)(1) provides in pertinent part:

A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
* * *

B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.

* * *

E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

"[A] simple objection to the sentence is sufficient to preserve appellate review on the grounds of excessiveness." *State v. Fruge*, 23-0552, p. 21 (La. App. 4 Cir. 4/11/25), ___ So.3d ___, ___, 2025 WL 1088089, at *11 (alteration in original) (quoting *State v. Mitchell*, 21-0488, p. 4 (La. App. 4 Cir. 12/15/21), 334 So.3d 449, 452 (citations omitted)). "However, '[w]here a defendant merely objects to the excessiveness of the sentence without stating the specific grounds for his objection,

18

he is limited to a bare review of the sentence for constitutional excessiveness.'" *Id.* (quoting *State v. Barnes*, 01-489, p. 3 (La. App. 5 Cir. 10/17/01), 800 So.2d 973, 976).

"Under the Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution, the imposition of excessive and cruel punishments are prohibited." *Scott*, 23-0022, p. 17, 372 So.3d at 55. "The excessiveness of a sentence is a question of law, and a reviewing court will not set aside a sentence [for excessiveness] absent a manifest abuse of discretion by the trial [judge]." *Id.* at p. 17, 372 So.3d at pp. 55-56 (alterations in original) (citations omitted). "The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed." *Id.* at p. 18, 372 So.3d at 56 (quoting *State v. Bradley*, 2018-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So. 3d 94, 99-100 (citations omitted)). "Although a sentence is within the applicable statutory range, a sentence may be deemed unconstitutionally excessive if the reviewing court determines that the sentence does not serve to complete the acceptable goals of punishment, constitutes purposeful imposition of pain and suffering, and is disproportionate to the severity of the offense committed." *Id.* (citations omitted). "Therefore, '[t]he relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" *Id.* (quoting *State v. Mathieu*, 18-964, p. 4 (La. App. 3 Cir. 11/6/19), 283 So. 3d 1041, 1045.

In Louisiana, offenders convicted of second degree murder "shall be punished by life imprisonment at hard labor without benefit of probation, parole or suspension of sentence." La. R.S. 14:30.1(B). The life sentence imposed for

second degree murder under this statute is mandatory. As such, the district court lacked any discretion to deviate below the mandatory minimum unless, under exceptional circumstances, Defendant is entitled to a downward departure. *See State v. Lambert*, (where this Court held that the only way a defendant can rebut the presumption that a mandatory minimum sentence is constitutionally excessive is to show that "the legislature[] fail[ed] to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case"). 15-0886, p. 14, (La. App. 4 Cir. 1/20/16), 186 So.3d 728, 738.

Defendant argues that this Court should grant him the opportunity to prove that he is entitled to a downward departure as it did for the defendant in *State v. Lawrence*, 09-1637, pp. 18-19 (La. App. 4 Cir. 8/25/10), 47 So.3d 1003, 1014. In *Lawrence*, after the defendant was sentenced to life imprisonment without the possibility of parole, probation or suspension of sentence for second degree murder he filed a motion to reconsider and argued that the sentence was excessive under the circumstances. After filing said motion, the district court disallowed arguments regarding the alleged unconstitutionally excessive sentence. On appeal, this Court, finding that the district court was required to consider the defendant's motion for reconsideration of sentence, remanded the matter to the district court for an evidentiary hearing. We note, however, that the facts in *Lawrence*, are distinguishable from the case *sub judice*. Here, Defendant did not file a motion to reconsider his sentence nor did he make an argument in the district court that his sentence for second degree murder was unconstitutionally excessive. Accordingly, Defendant waived his right to any such review.

Finally, Defendant avers that his claim for ineffective assistance of counsel should be heard on appeal. Defendant argues that the record before this Court is sufficient to show that defense counsel "did less than nothing" at the trial and during sentencing. "As a general rule claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." *State v. Boyd*, 14-0408, p. 2 (La. App. 4 Cir. 9/12/18), 318 So.3d 403, 405 (quoting *State v. Howard*, 98-0064, p. 15 (La. 4/23/99), 751 So.2d 783, 802). After a review of the record, we find Defendant's claim would be more properly raised by application for post-conviction relief in the trial court where, if necessary, a full evidentiary hearing can be conducted. This assignment of error is unpersuasive.

## CONCLUSION

For the foregoing reasons, we affirm Defendant's conviction and sentence for second degree murder; we affirm Defendant's conviction for unauthorized use of a motor vehicle, but vacate the sentence and remand for resentencing in accordance with the law; and we reverse Defendant's conviction and sentence for obstruction of justice.

**AFFIRMED IN PART;**
**REVERSED IN PART; REMANDED**